# CHARLESTON

Dixon-Pocahontas Fuel Co. v. Myers Grain Co.

Submitted September 7, 1911.   Decided February 4, 1913.

1. Evidence—*Best and Secondary.*
    Oral testimony is admissible to prove title to personal property, notwithstanding there is a writing, not  produced, evidencing the same fact.  (p. 717).

2. Same.
    In a controversy between a creditor of the drawer of a draft, who has attached the fund in the hands of the collecting bank, and the endorsee thereof, concerning title to the fund, oral evidence is admissible to prove title without the production of the draft.  (p. 717).

Error to Circuit Court, Fayette County.

Action by the Dixon-Pocahontas Fuel Company against the Myers Grain Company. The Union National Bank intervenes. Judgment for plaintiff, and intervener brings error.

*Reversed and Remanded.*

*Hubbard & Lee,* for plaintiff in error.

*Dillon & Nuckols,* for defendant in error.

WILLIAMS, JUDGE:

On March 9, 1909, the Myers Grain Company, a foreign corporation having its place of business in Columbus, Ohio, sold a carload of corn to the New River Company, to be shipped to McDonald, Fayette County, West Virginia, consigned to its own order. On the same day it drew a sight draft on the New River Company, payable to the Union National Bank of Columbus, Ohio, and indorsed it, together with the bill of lading, to said bank which discounted it. The Union National Bank thereupon forwarded the draft, with bill of lading attached, to the Bank of Mt. Hope, at Mt. Hope, Fayette county, West Virginia, for collection. The draft was paid to the collecting bank.

The Dixon-Pocahontas Fuel Company, on the 25th of March, 1909, brought an action against the Myers Grain Company, before J. P. Staton, a justice of the peace in Fayette county, and attached $250 of the funds in the hands of the Bank of Mt. Hope; and the Union National Bank thereupon intervened, claiming to be the owner of the fund. The justice decided the right of the property against it, and it appealed to the circuit court. The case was there tried on the 11th of November, 1909, on the issue of title to fund, and a verdict rendered, finding Myers Grain Company to be the owner. On motion of the intervener, the circuit court set the verdict aside and awarded a new trial. The case was again tried on the 21st of February, 1910, and the court, upon motion of the plaintiff, struck out all the evidence offered by the intervener, and directed the jury to render a verdict finding the funds levied upon to be the property of the Myers Grain Company, and rendered judgment upon the attachment, in favor of plaintiff. The intervener excepted to the striking out of its evidence and direct-

ing a verdict, and also moved to set aside the verdict, and for a new trial, which motions the court overruled. The writ of error was awarded on petition of the intervener.

The sole question presented for our decision is this, was oral testimony primary evidence and, therefore, admissible to prove title to the fund, or was the draft the only primary evidence of that fact. The case was tried upon an agreed statement of facts, and upon depositions taken on behalf of the intervener; the plaintiff offered none. The intervener did not produce the original draft and bill of lading, but did offer copies of the same, which the court held not to be admissible, because the absence of the originals had not been accounted for. But, were the originals essential to prove title to the property in question? We think not. It was not a question of proving the contents of a paper. The contents of neither the bill of lading nor the draft were important. They both had fulfilled their purpose. The terms of the carrier's contract were in no sense involved. The carload of corn had been carried and delivered to the purchaser, and no fact relating to the carrier's contract was material. The draft had been paid, and would likely be in the hands of the drawee. It had been sent by the Union National Bank to its agent, the Bank of Mt. Hope, for collection, and had been paid It also had accomplished its purpose, and its contents were not material If the title to the fund had been an issue between the drawee and the endorsee, the draft, with its endorsement, might have been the best evidence of the agreement. But there is no controversy between them as to which of them owns the fund; and the attaching creditor's right can rise no higher than the right of the Myers Grain Company. *Neill* v. *Produce Co.,* 41 W. Va. 37. And there is not the slightest evidence that the draft was fraudulently assigned. The sole question is, who owns the fund; and, notwithstanding the original draft, if it had been produced, might have tended to prove title to the fund in the Union National Bank, still it would not necessarily be conclusive of that fact, because the draft could have been endorsed to the Union National Bank for the purpose of collection only, and that fact might have appeared on the paper. E. J. Vaughn and Daniel W. Delay, cashier and clerk, respectively, in the Union National Bank, testify that the draft was purchased out-

right by said bank; that the discount charged was one-fourth of one per centum, and that there was no understanding had with the bank that the draft should be charged back to the account of the Myers Grain Company in the event it was not honered. They both say that the Myers Grain Company was credited on its account with the net proceeds of the draft, which was $487.30, and that it was an unconditional purchase    The Myers Grain Company was a large customer of the bank, and the transaction appears to have been in perfect good faith.    The testimony of Mr. C. M. Myers, treasurer and general manager of the Myers Grain Company, is to the same effect.

What better proof of title to personal property could there be than the consistent oral testimony of both buyer and seller. Such evidence is certainly primary and, we think, the best evidence of which the nature of the case will admit.    The draft and its endorsement would not have been conclusive evidence of title, for the reason that it would not prove that the draft had not been endorsed simply for the purpose of collection, in which case only a qualified interest would have passed.

Elliott, in his work on Evidence, in discussing the question of the rule as to the best and secondary evidence, Vol. 1, sec. 216, says: "There is a clear distinction between proving the existence of a fact which has been put in writing and proving the writing and contents of the writing itself. If the essential fact to be proved is not the contents of a written instrument, but an independent fact, to which the writing is merely collateral, or of which it is merely an incident, there is no reason for the application of the rule. In such cases the contents of the document are no part of the issue and there is no understanding that the writing shall be the sole repository of the fact. When the parol evidence is as near to the fact testified as to the writing itself, then each is primary." See also, 2 Wigmore on Evidence, secs. 1246-1247; and Jones on Evidence (2nd ed.), sec. 203.

In *Street* v. *Nelson,* 67 Ala. 504, which was an action of trover, it was held that: "The ownership of personal property may be proved by oral testimony, unless the question of the transfer of the title arises between the parties to the convey-

ance, and is the direct issue in the cause, then the highest evidence must be produced, or its absence accounted for."

The following authorities are also in point, and hold that the mere fact of title to personal property may be shown by oral evidence, notwithstanding there is also a writing evidencing the sale which is not produced nor its absence accounted for, unless the contents of the writing itself become material, in which case the writing itself becomes the best evidence and must be produced, or its absence accounted for, before oral evidence will be admitted as to its contents: *Thompson* v. *Mapp,* 6 Ga. 260; *Stanley* v. *Sutherland,* 54 Ind. 339; *Gallagher* v. *London Assn. Co.,* 149 Pa. St. 25. The case last cited was an action upon an insurance policy for loss, by fire, of a house upon a leasehold estate. The insurance company defended on the ground that the plaintiff did not own the house, and offered in evidence a paper writing purported to be signed by defendant and his wife, with their marks, conveying the house to J. B. Shiffer. The court below excluded the paper on the ground that neither of the subscribing witnesses to it had been called as witnesses, and no proof of diligent effort to reach them, and hence secondary evidence, as to their signatures, was not admissible. It also refused to permit J. B. Shiffer, the grantee, to testify that he owned the house. The supreme court held that Shiffer's testimony was primary evidence and admissible.

*Sirrine* v. *Briggs,* 31 Mich. 443, was a suit very like the one in hand. It involved the ownership of a stock of merchandise formerly owned by Taylor & Beebe. They mortgaged the goods to James Tillou. The mortgage becoming due and being unpaid, Tillou, with the consent of the mortgagor, took possession of them. Taylor, a member of the firm of Taylor & Beebe, executed a writing purporting to transfer to Tillou the interest of the firm in the goods, in consideration of the discharge of the mortgage and of the payment by Tillou of $1,000 on the debts of the firm  Tillou subsequently sold to one Briggs who took possession, and while he was in possession, Sirrine, sheriff, levied upon a portion of the stock of goods, by virtue of an execution against the firm of Kelsey & Beebe of which Taylor's partner was a member. Briggs, claiming title by sale from Tillou, brought suit against Sirrine the sheriff. It was assigned as error that the

trial court permitted parol evidence to prove the sale from Tillou to Briggs, when it appeared that the sale had beén evidenced by a writinng which was not produced. The distinguished law writer and jurist, Judge Cooley, who wrote the opinion of the court, says, page 446 : "But it was not necessary to put the writing in evidence, or to do anything more than to show the actual sale and transfer of possession from Tillou to Briggs. No question could possibly arise upon the terms of the arrangement between them ; and the writing, though admissible, could not exclude parol evidence of the transaction."

The oral testimony of the intervener's witnesses was primary evidence to prove its title to the attached fund in the Bank of Mt. Hope, and the court erred in excluding it, and in directing a verdict.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*