CHEADLE, Trustee, Appellant, *v.* BARDWELL et al., Defendants; CALIFORNIA COMPANY, Respondent.

(No. 7,102.)

(Submitted October 6, 1933. Decided November 2, 1933.)

[26 Pac. (2d) 336.]

*Messrs. Hall & McCabe,* for Appellant, submitted a brief; *Mr. H. C. Hall* argued the cause orally.

*Messrs. Johnston, Coleman & Jameson,* for Respondent, submitted a brief; *Mr. H. J. Coleman* argued the cause orally.

306

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment foreclosing a lien in Liberty county. The court refused to extend the provisions of the lien to certain oil-well casing used in the drilling of an oil and gas well. The appeal is from that phase of the judgment, and the question for us to decide is whether the lien did attach to the casing.

J. J. Hardie and L. C. Bardwell were in possession of an oil and gas lease, and on the twenty-eighth day of April, 1930,

they entered into a written contract with Harold J. Hayes and William C. Fleming, copartners doing business under the name of Acme Drilling Company, for the drilling of a well on the lease. The contract provided that a well should be drilled to the depth of 3,300 feet, unless the Madison limestone or commercial production of oil should be encountered at a lesser depth; there was a further provision for deeper drilling under certain conditions. The drilling contractors were to pay all bills for material and labor. Hardie and Bardwell were to furnish all casing required for use in the well at the drilling location without cost to the drilling contractors. The drilling of the well was begun on the first day of June, 1930, and was completed to the Madison limestone, to the satisfaction of Hardie and Bardwell, on the twenty-second day of February, 1931. There was an interval during which no drilling was done. Hardie and Bardwell notified the contractors in writing that the well had been completed according to contract. The total compensation due the drillers was $35,350, $10,485 of which was paid, leaving a balance of $24,865. The casing was furnished and used in the well. The court entered judgment for the amount demanded, plus attorneys' fees in the sum of $1,100, and for costs and disbursements.

The casing used in the well was actually furnished by the defendant, the California Company. The well was not a commercial oil or gas well. Plaintiff alleged in his complaint that L. C. Stevenson and the California Company claimed some interest in the oil and gas leasehold and the appurtenances, and asked for the foreclosure of a lien against everybody. The drilling contract is set out at length as an exhibit to the complaint. Stevenson defaulted, and his default was entered. Hardie and Bardwell filed answer denying some allegations of the complaint, but admitting the drilling of the well, the cost of the same, and the amount of cash paid thereon. As an affirmative defense they set up that leases and interests in leases were assigned to Harold J. Hayes, one of the drilling contractors, covering 4,160 acres of land, in full payment and discharge of the balance of the cost of the drilling.

The California Company filed a separate answer in which it alleged that the casing in the well was furnished by it to Hardie and Bardwell under a written contract entered into by it with Hardie and Bardwell, under the terms of which it was agreed that sufficient casing for the required purpose should be furnished and delivered at the well, but the title to the casing should remain in the company until the well was completed, and that, if oil and gas should be encountered therein in commercial quantities, the title to the casing should then vest in Hardie and Bardwell.

After the lien was filed, the drilling contractors assigned the balance due and the lien to E. K. Cheadle, Jr., trustee and plaintiff in this action. The cause was tried to the court without a jury; requests for findings of fact were made by both parties, and the court finally entered its findings, conclusions of law and a judgment. It found that the well was completed. to the satisfaction of Hardie and Bardwell, that the drillers were entitled to the amount above mentioned, and that the casing furnished by the California Company and used in the well was not subject to plaintiff's lien.

The only real controversy tried by the court involved the casing. Plaintiff claims that his lien foreclosed by the court should have been decreed to include the casing. The defendant California Company denies that. The court found in accordance with the latter contention. All other questions seem to have passed out of the case, or to have been abandoned at the trial and on appeal. There are other collateral facts connected with the transaction, but we do not deem them of sufficient importance to detail here. Apparently the major issue of the case, and that upon which the decision turns, is involved in the question of the ownership of the casing.

The lien was filed under the provisions of section 8375, ▮ Revised Codes of 1921, as amended by Chapter 152 of the Laws of 1923, which section reads as follows: "Any person, corporation, or co-partnership who shall under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe or oil pipe line, or with

the trustee or agent of such owner, who shall perform labor or furnish material, machinery, and oil well supplies used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well, or who shall furnish any oil well supplies, or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing any gas well, shall have a lien upon all of the right, title and interest of such owner in and to the whole of such leasehold or oil pipe line or gas pipe line, or lease for oil and gas purposes, the building, and appurtenances, and upon the material and supplies so furnished, and upon all of the right, title and interest of such owner in and to said oil and gas well for which they were furnished, and upon all of the right, title and interest of such owner in and to all other oil wells, fixtures, and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished and labor performed.''

Each party has attempted to construe the statute. We find that it is incumbent upon us to make a construction of the section. In so doing, it seems to us that it is helpful to segregate the provisions of the section so that each may be properly understood. We propose to take the section apart and put it together again. We must analyze the section in order to demonstrate what it really means. It would appear that the provisions may be segregated into three parts. Two of these parts may well be combined. Here is what we think the section really says: Any person * * * who shall under contract * * * with the owner of any leasehold, etc., perform labor or furnish material, etc., shall have a lien * * * upon the material and supplies so furnished, and upon all of the right, title and interest of such owner in and to the whole of such leasehold, or oil pipe line or gas pipe line, or lease for oil and gas purposes, and the oil and gas well for which they were furnished, etc.

There were two contingencies, under either of which plaintiff could have held the casing: (1) If he, or his assignors, had furnished the casing, the lien would have attached to the casing

absolutely, and in disregard of transfers, etc.; the theory of the statute being that the vendor of an article may perfect a lien thereon and hold the same against the world. Here plaintiff and his assignors do not claim that they furnished the casing. (2) Not having furnished the casing, and having no direct lien for the purchase price of that particular property, another contingency of the statute was invoked. Whatever ownership or title the defendants Hardie and Bardwell possessed in any of the other enumerated property was by the statute made subject to the lien for the work and labor.

As has been pointed out, the arrangement of the clauses of the section is confusing, but the purpose of the legislature is clear. The intent was that a vendor may, if he pursues his remedy under the statute, follow the property he sold or furnished, and recover it or its value from the vendee, or from any other person into whose possession it may have passed. It may be said that, for the purpose of affixing the lien to the thing sold, the statute is impersonal. The article sold or furnished, wherever found, stands as security for its own purchase price. But, when the other provisions of the section are invoked, they come into play in a personal or qualified way. They declare that, in addition to the lien on the thing sold, a vendor may also have a lien on other property, not an unqualified lien "willy-nilly," but a lien upon whatever title and ownership the lienee may have in such additional property.

The principles involved are manifest. A vendor may be said to have either a right to receive payment for his wares, or, failing in that, a right to recover them back. This right may be said to be largely fundamental, and is founded upon an equitable principle; the principle that he is entitled to the price of the thing, or, if he fails to obtain that, the thing itself. But, when a vendor seeks to go beyond the recovery of the property he sold or furnished, he proceeds upon a different theory—a less fundamental, a less equitable, one. The legislature evidently designed to permit a lien upon the other enumerated property, but only to the extent of the rights of the lienee therein. It sought to hold the lienor short of the invasion of

the rights of third persons. It said: "You may, in addition to taking the article sold, recoup from the other property of the vendee, but you cannot subject property rights of others to the payment of your claim." Under the circumstances of this case, it is obvious that the lien of plaintiff did not attach to the casing under the absolute clause of the statute for the purchase price of the casing, but only went to the "right, title and interest" of the defendants Hardie and Bardwell therein.

What, then, was the title of the defendants Hardie and Bardwell? To answer this question we must look to the facts and circumstances in which the casing came to the property and went into the well. The well was drilled under contract between Bardwell and Hardie, owners of the leasehold, and Hayes and Fleming (Acme Drilling Company), assignors of the plaintiff. By the terms of that contract, plaintiff's assignors agreed to drill the well, and Bardwell and Hardie agreed to furnish all casing at the well. The well was drilled in accordance with the contract. Bardwell and Hardie notified plaintiff's assignors to that effect.

We find that the casing was furnished under a separate written contract made between the defendants the California Company and Bardwell and Hardie. Plaintiff objected to the introduction of the contract, and says it was not admissible in evidence. We will discuss that feature of the case later; first let us see what the contract did provide. It was lengthy, and covered the assignment of certain leases. The provision pertinent to the instant point is paragraph E thereof, which reads as follows: "It is understood and agreed between the parties hereto that title to the casing and equipment shall remain in the party of the second part [The California Company] at all times until said well is completed. If oil or gas is encountered therein in commercial quantities, title to said casing and equipment shall then vest in the parties of the first part [Bardwell and Hardie]. If such well is drilled to the depth hereinabove specified or deeper without encountering oil or gas in commercial quantities, or if the parties of the first part shall at any time discontinue drilling operations upon said well for a period

of ninety days except for the reasons hereinabove expressly provided, the parties of the first part shall thereupon make every reasonable effort to salvage so much of such casing as is then in the well and will return the same to the party of the second part at the well. It is understood that if said well is drilled to the depth above specified or deeper without encountering oil or gas in commercial quantities, the party of the second part will contribute the sum of five hundred dollars toward the cost of salvaging such casing, and will also pay the cost of shooting such casing if in its opinion it is advisable to shoot the same."

The fair intent of this paragraph was to the effect (1) that the California Company was to furnish the casing; (2) that the title thereto was to remain in that company at all times until the well was completed; (3) that, if oil or gas was encountered in commercial quantities, the title should vest in Bardwell and Hardie; and (4) that, if the well was drilled to the specified depth without encountering oil or gas in commercial quantities, Bardwell and Hardie were to return the casing to the California Company at the well. Provision was made for the expenses of salvaging the casing in case of certain contingencies.

It is contended by plaintiff that the casing must be deemed to have been affixed to the realty, by virtue of the provisions of section 6670, Revised Codes of 1921, which reads: "Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine." With this contention we do not agree. Our Code section was taken from California. It has been construed by the courts of that state, and the construction is not in accord with such construction. The California court recognized the rule that chattels may be annexed to real estate and still retain their character as personal property. (*Hendy* v. *Dinkerhoff*, 57 Cal. 3, 40 Am. Rep. 107; *Best Mfg. Co.* v. *Cohn*, 3 Cal. App. 657, 86 Pac. 829.) This court has recognized that rule in numerous instances. (*Montana Electric Co.* v. *Northern Valley M. Co.*, 51 Mont. 266, 153 Pac. 1017; also *Padden* v. *Murgittroyd*, 54 Mont. 1, 165

Pac. 913; *Helena & Livingston etc. Co.* v. *Northern Pacific Ry. Co.*, 62 Mont. 281, 205 Pac. 224, 21 A. L. R. 1080; *Shipler* v. *Potomac Copper Co.*, 69 Mont. 86, 220 Pac. 1097; *Schmuck* v. *Beck*, 72 Mont. 606, 234 Pac. 477.)

There is a legal presumption that one in possession of land is presumed to be the owner of the fixtures thereon, unless the contrary is made to appear by the person who owns it, by a preponderance of the evidence. This is a disputable presumption, and, of course, must give way to facts. (*Schmuck* v. *Beck*, supra.) We hold that in this case the presumption of the statute was overcome by undisputed evidence to the contrary.

Having decided that the casing did not become a part of the leasehold under the terms of the statute, we must construe the legal effect of the contract between the California Company, and Bardwell and Hardie—the contract under which the casing was delivered by that company for the benefit of Bardwell and Hardie and for the use of plaintiff's assignors in the drilling of the well. It is suggested that the transaction amounted to a conditional sale. We do not agree with that theory. As was said by this court in *Ferry & Co.* v. *Forquer*, 61 Mont. 336, 202 Pac. 193, 195, 29 A. L. R. 642: "There were not present any of the elements of a sale." Here there is no suggestion of any contingency under which Bardwell and Hardie were ever to purchase the casing, or that the California Company would ever sell it to them. It is true that it was provided that, in case the well proved to be a producer, the title to the casing should then vest in Bardwell and Hardie. That provision was somewhat in the nature of an offered reward for the discovery of oil or gas, made perhaps in view of the ownership of the California Company in the leases described in the agreement, and induced by the incidental benefits likely to accrue to the company from the completion of a producing well in the area. This contingent promise did not in any sense change the character of the main agreement, and did not convert it into a conditional sales contract. The writing contained more of the

elements of a bailment than of any other type of contract. We believe it was a bailment.

Was the California Company estopped to raise the question ▮▮▮ of ownership of the casing? Plaintiff's complaint alleges that the California Company claimed some interest in the casing, and in its separate answer the company pleaded the facts of that claim and attached a copy of the contract as an exhibit to the answer. Plaintiff's reply to the contentions of the company contains only denials. No plea of estoppel is asserted. It would seem to us, in view of the pleadings and in the light of all the facts, that the case finally proceeded to the very issue now under consideration, and that that issue came to the district court and comes to us head-on without any special plea to break its effect or divert its course. (*Eisenhauer* v. *Quinn,* 36 Mont. 368, 93 Pac. 38, 122 Am. St. Rep. 370, 14 L. R. A. (n. s.) 435.)

We cannot see how a plea of estoppel would have aided in the present situation. There is nothing in the contract for the drilling of the well that imposes upon Bardwell and Hardie the obligation to own the casing to be furnished. That contract merely provides that Bardwell and Hardie agreed to furnish all casing at drilling location without cost to the contractor. It is now too late to insist that Bardwell and Hardie were obligated to furnish casing owned by them. They had to furnish all casing, and no one contends that they failed to do what they agreed to do.

It is urged that, in view of the fact that the casing was furnished without notice to the drilling contractors that it was not owned by Bardwell and Hardie, and that it was owned by the California Company, it must be presumed, for the purposes of this action, that the casing was owned by Bardwell and Hardie, and therefore subject to the lien as their property. Appellant says that "the California Company clothed Bardwell and Hardie with every indicia of ownership." The record does not bear out this statement. It is silent as to representations of ownership. The mere delivery of the casing without any representation of ownership does not meet the requirements of the

rule in such cases. The rule is laid down in Corpus Juris as follows: "In order that the real owner of personal property may be estopped to assert his title against one who has dealt with the apparent owner on the faith of his apparent ownership of, or authority over it, something more is required than mere possession on the part of the apparent owner, since merely entrusting a third person with possession does not constitute holding him out as owner. * * * The owner must go further, and do, or omit to do, some act of a nature such as to mislead persons as to the true possession of the title." (21 C. J. 1178; see, also, *Dever* v. *Girson,* 75 Mont. 412, 243 Pac. 812; *Scott* v. *Jardine Gold M. & M. Co.,* 79 Mont. 485, 257 Pac. 406.)

Finally we come to the question of the admissibility of ▪ Defendant's Exhibit 8, the contract for the furnishing of the casing, entered into between the California Company and Bardwell and Hardie. It is urged that, because Hayes and Fleming, the drillers, were not parties to the contract, it was not admissible, and that it merely constituted a declaration in support of title. Such a contention is not tenable in the light of the record. An examination thereof clearly indicates that all other issues passed out of the case, and the ownership of the casing remained as the only real issue. The issue of indebtedness for the drilling of the well was contained in the pleadings, but was not seriously urged at the trial. Bardwell and Hardie did allege the assignment of certain leasehold interests to Hayes and Fleming in payment of the balance due on the contract. Hayes took these to Wisconsin in an effort to raise money, but was unsuccessful in the attempt. The claim that the drilling debt was paid by such assignment was not substantiated, and was not seriously urged on this appeal. So the only issue really contested involved the title to or ownership of the casing. This issue came into the case by virtue of the provisions of section 8375, supra, construed earlier in this opinion. We there pointed out that the statute itself contemplates such an issue of ownership whenever a lienor seeks to extend his lien beyond the property he sold or fur-

nished. In such event it is the right, title and interest of the debtor that must stand as the additional security for the debt. That being the case, the facts and circumstances showing the character of the ownership—the kind of title, whether absolute or qualified—must at once become a proper and, in this case, a controlling subject of investigation. As we have indicated, the trial proceeded at once, and properly, to that issue. The title to the casing being involved, evidence as to that title was, of course, proper. "A contract is not to be disregarded in a controversy between either of the parties thereto and a third person concerning the subject matter of the contract, for it is prima facie evidence of the relation that the contract and the parties to the contract bear to each other in respect to such matter." (10 Cal. Jur. 886; *Ellis* v. *Crawford*, 39 Cal. 523.)

The court was entitled to the best evidence available. The theory of best evidence has been crystallized into a rule. Corpus Juris says: "The rule of evidence commonly known as 'the best evidence rule'—one which from early times has been repeatedly enunciated by the courts—is that the highest degree of proof of which the case from its nature is susceptible must if accessible be produced; or in other words, that no evidence shall be received which presupposes that the party which offers it can obtain better evidence. If the best evidence possible cannot be produced, then the next best evidence should be admitted. It is for the court to determine what is the best, and what is secondary, evidence of any fact which it is desired to prove." (22 C. J. 974, "Evidence," sec. 1220.)

What, then, was the best evidence? It seems to us that the written contract, the contract entered into between the parties at the time of the delivery of the casing, was the best evidence of title. (See, also, 10 R. C. L. 903–905; *Dixon-Pocahontas Fuel Co.* v. *Myers Grain Co.*, 71 W. Va. 715, 77 S. E. 362, Ann. Cas. 1914C, 115, and cases cited therein. Compare *Mayfield* v. *Southern Ry., Carolina Division*, 85 S. C. 165, 67 S. E. 132.)

What we have said with relation to the contract between the California Company and Bardwell and Hardie disposes of the theory of appellant that that company was a coadventurer in the drilling of the well. The elements necessary to such a relation do not appear in the contract or in the record. Likewise the repurchase theory discussed by appellant is without force. It follows that, if the casing was not sold by the California Company, no repurchase was contemplated or involved.

It is not necessary to discuss other assignments of error. It is sufficient to say that all have been examined, and in our opinion the judgment must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.