[Civ. No. 6651.   Third Dist.   Oct. 29, 1941.]

OROVILLE–WYANDOTTE IRRIGATION DISTRICT, Respondent, v. F. F. FORD et al., Defendants; FRANK STAHL et al., Appellants.

J. J. Doyle and Theodore Tamba for Appellants.

Hankins & Hankins for Respondent.

THOMPSON, Acting P. J.—The defendants, Frank Stahl and Honcut Gold Mines Company, Ltd., have appealed from a judgment quieting title against them to seven mining claims in Butte County, together with mining machinery and apparatus used on the premises. In support of its title the plaintiff relies upon certain deeds of conveyance executed in February, 1934, by the collector of the irrigation district upon sales of the lands to the plaintiff for delinquent assessments which were levied in 1929, as provided by sections 43–48 of the California Irrigation Act. (Stats. 1897, p. 254, and amendments thereto; 1 Deering's Gen. Laws of 1937, page 1792, at page 1830.) While the mining machinery and apparatus were not separately assessed or specifically sold for delinquent taxes, the theory upon which the trial court quieted title thereto is that they are deemed to be affixed to the land and an inseparable part of the mining property for taxation purposes under the provisions of section 2601 of the Public Resources Code, formerly section 661 of the Civil Code.

The appellants contend that the provisions of section 2601 of the Public Resources Code were rendered inapplicable and that, by written agreement executed January 27, 1930, between a former owner of the mining claims and W. F. Anderson, the purchaser thereof, through whom the appellants derived title, the machinery and apparatus were acknowledged to be separate personal property belonging to the operators of the mines and removable at will, as distinguished from fixtures which are ordinarily deemed to be a part of the real property, that Anderson conveyed all his interest in the mining property and machinery May 18, 1931, to Honcut Gold Mines Company, Ltd., and that both instruments were duly recorded, charging the plaintiff with notice of the reservation of title to the personal property separate and apart from the mining claims. It is asserted the findings and judgment quieting title in plaintiff to the mining machinery and appliances are not supported by the evidence for the reason that plaintiff never did acquire title thereto by sale and convey-

ance of the mining claims for delinquent assessments or otherwise.

The record shows that prior to July 13, 1908, I. M. M. Allen owned 480 acres of land in Butte County, including the mining claims which are involved in this suit, and that, on the last-mentioned date, he conveyed all of his mining claims and rights in the said property to the Big Blue Lead Mining Company. February 7, 1917, the Big Blue Lead Mining Company conveyed to F. F. Ford and Charles G. Fowler, by deed dated February 7, 1917, and duly recorded, "all those certain pieces and parcels of land [describing the mining claims in question] and all those certain mining rights" therein, reserving unto the grantor, Big Blue Lead Mining Company, the right to conduct mining enterprises on the land for a period of twenty-five years thereafter. January 27, 1930, the Big Blue Lead Mining Company transferred by deed all of its interest and mining rights in the property to W. F. Anderson. In the last-mentioned instrument the following agreement was made with respect to the ownership, character and title to the mining machinery and equipment used in operating the mining enterprises thereon:

"It is mutually agreed that all mining appliances, machinery and equipment placed on or in said described premises or used in mining, working or developing the said property by the party of the second part shall at all times be the property of the party of the second part and, in the event of the termination of this agreement without completion of purchase, all said and above mentioned mining appliances and machinery may be removed by the party of the second part."

May 18, 1931, Mr. Anderson conveyed all of his right and title in the property to the Honcut Gold Mines Company, which thereupon took possession thereof and proceeded to operate the mines. Mr. D. E. Young testified that all of the mining machinery and equipment which are involved in this suit were installed on the property after the conveyance thereof to Anderson, in which instrument the above-quoted provision of agreement with relation to the character and ownership of the machinery and equipment appeared. There is no evidence to the contrary. The conveyance to Anderson of all mining rights in the property contained an agreement to sell to him the fee in the claims for the sum of $50,000,

to be paid in annual specified installments on or before January 5, 1938, together with specified royalties to be paid from the minerals extracted from the mines. That contract for sale of the property and conveyance of the mining rights remained in full force. The Honcut Gold Mines Company thereby became the owner of all machinery and equipment which were installed on the property with the absolute right to remove them at any time even though the purchase of the mines was not completed and the agreement became terminated. The conveyance to Anderson and thence to the Honcut Gold Mines Company was of an interest in the real property and a reservation of title to the machinery and appliances. It was duly acknowledged and recorded in the public records of Butte County.

The mines are located in Butte County and in the Oroville-Wyandotte Irrigation District. Irrigation districts are authorized to assess only the land within their districts. (Sec. 35, Irrigation Act.) They may not levy assessments against separate personal property. These particular mining claims were assessed by the irrigation district in 1929, before the machinery was placed on the properties. Liens were thereby created *against the real properties* to secure the payments of those assessments. There was no lien against the separate personal property unless, by virtue of section 2601 of the Public Resources Code, the machinery which was subsequently placed thereon automatically became an inseparable part of the realty regardless of the agreement to the contrary between the parties. For default of payments of the assessments *against the interests in the real property for the year 1929*, the liens were foreclosed pursuant to the provisions of the Irrigation Act, and on February 26, 1934, deeds of conveyance to the lands were executed by the tax collector of the district to Oroville-Wyandotte Irrigation District. Neither the foreclosure proceedings nor the deeds last mentioned contain any reference to the personal property or machinery.

The evidence shows that the mining rights in the claims which are here involved were also assessed by the county of Butte and sold to the State of California for delinquent taxes on July 2, 1935. The mining machinery and equipment were sold by the sheriff of Butte County to the appellant, Frank

Stahl, on March 9, 1937, for the sum of $3,324.67, to satisfy a judgment against Honcut Gold Mines Company, Ltd.

This suit to quiet title to the mining claims and to the machinery was commenced in May, 1937, against these appellants and against F. F. Ford, W. F. Anderson, the Big Blue Lead Mining Company, and a large number of other defendants. Ford, Anderson and several of the other defendants filed disclaimers. The defaults of other defendants were entered. The appellants, Frank Stahl and Honcut Gold Mines Company, Ltd., filed separate answers claiming title to the machinery and equipment by virtue of the agreement heretofore quoted. Upon trial, the court found that plaintiff is the owner and entitled to possession of the mining claims and machinery, which are specifically described, by virtue of its foreclosure of liens against the real property, and, upon the contrary, that neither Stahl nor Honcut Gold Mines Company had any right, title or interest in or to either the real property or the machinery. Judgment was rendered accordingly. From that judgment this appeal was perfected.

We are of the opinion the findings and judgment to the effect that plaintiff is the owner and entitled to the possession of the machinery and mining equipment, as distinguished from the real property, are not supported by the evidence, for the reason that the irrigation district did not possess a lien for unpaid assessments against the personal property, and the proceedings foreclosing the liens against the real property did not purport to convey to the district title to the machinery and equipment.

The fact that the property may have been subsequently sold and conveyed to the State of California for non-payment of other county taxes is immaterial. That issue does not appear to have been involved in this suit. The state was not a party to this action, and the appellants do not affirmatively ask to quiet title to the property in themselves. Their title to the property, as against the state, may properly be determined in another action.

It is true that a lien created in favor of the irrigation district by virtue of its assessment levied in 1929 against the land is on a parity with the lien created in favor of Butte County for general taxes assessed in that year against the same land. But it has been held that a deed, executed pursuant to foreclosure proceedings, to any of the state agencies

does not extinguish existing liens in favor of the state. (*La Mesa Lemon Grove, etc.,* v. *Hornbeck,* 216 Cal. 730, 737 [17 Pac. (2d) 143].) In the case last cited it is said in that regard:

" . . . we may now safely conclude that under our system of taxation liens in favor of county and municipal corporations and special assessments, under the authority of state agencies for public purposes, are all on an equality. By this is meant that in case of delinquency a deed to any one of these agencies for such taxes *will not obliterate the existing liens on the property in favor of any or all of the others.* . . ." (Italics ours.)

It follows that the deeds which were executed to the irrigation district in the present case do not abrogate the lien for taxes in favor of Butte County, but, on the contrary, the title secured by the irrigation district is subject to satisfaction of the lien of the county. Since the state was not a party to this action, it had no opportunity to assert its title to the property. ■ It is a cardinal rule of law that a plaintiff in an action to quiet title against adverse claims must recover judgment on the strength of his own title and not on the weakness of the defendants' title. (22 Cal. Jur. 167, sec. 42.)

It is true that section 2601 of the Public Resources Code, formerly section 661 of the Civil Code, provides that:

"Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."

■ By means of a fiction of law the preceding section declares that machinery and tools used in working or developing a mine shall be deemed to be affixed to the mine whether they are actually attached to the land or not. Fixtures are ordinarily considered a part of the land to which they are attached and pass with a conveyance to the real property. (Sec. 660, Civil Code; sec. 2601, Pub. Res. Code.) There is a uniformly-recognized exception to the preceding rule, to the effect that parties to a conveyance of real property or to an interest therein represented by a contract to purchase realty, may determine between themselves that machinery or chattels to be annexed to the land shall retain their character as

personal property with the privilege of removing it, and that such agreements are binding between the parties and against third persons having actual or constructive notice thereof, regardless of statutory provisions with respect to fixtures.

In a suit to quiet title to mining property and machinery used in operating mines, founded upon facts similar to those of the present action, it was said in *Teater* v. *Good Hope Development Corporation,* 14 Cal. (2d) 196 [93 Pac. (2d) 112], at page 207:

"There is an exception to the rule specified in sections 660 and 661 of the Civil Code which may be thus stated: that the parties themselves may, in their dealings with chattels annexed to or used in connection with real estate, fix upon them whatever character, as realty or as personalty, they· desire and the courts will give to the property the character which the parties themselves have fixed upon. (*Miller* v. *Struven,* 63 Cal. App. 128 [218 Pac. 287]; *Fratt* v. *Whittier,* 58 Cal. 126 [41 Am. Rep. 251].)"

In accordance with that recognized exception to the general rule, section 660 of the Civil Code was amended in 1931, with the evident purpose of enacting into statute the wholesome principle above referred to. After defining the term "fixtures" that section provides:

" . . . except that for the purposes of sale, emblements, industrial growing crops and *things attached to or forming part of the land,* which are agreed to be severed before sale *or under the contract of sale, shall be treated as goods* and be governed by the provisions of the title of this code regulating the sales of goods." (Italics ours.)

There can be no doubt the foregoing exception to the general rule, with relation to fixtures, applies to parties to the agreement themselves, reserving machinery and equipment as the personal property of a purchaser of real estate, or an interest therein, by a conditional sales contract, or otherwise. But it is contended the exception does not apply to strangers to the agreement, and that the plaintiff in this case was not bound by that agreement. We think it also applies to third parties having actual or constructive notice of the reservation of title.

We are of the opinion the plaintiff is bound by that agreement contained in the conditional sales contract for purchase of the mining claims to the effect that the contracting pur-

chaser of the land should retain title to the machinery and equipment subsequently installed thereon, as his own personal property with the privilege of removing it at will, or in the event of the termination of the contract. That was clearly the intention of the parties to the conveyance. The machinery was not on the property when the plaintiff's lien for assessments vested. In reliance upon the written agreement, it was subsequently placed on the land by Anderson or his successor in title, Honcut Gold Mines Company. The instrument was duly acknowledged and recorded in Butte County. It charged plaintiff with constructive notice of the terms of that reservation of title to the machinery contained in the contract to sell the land to Anderson. (Sec. 1158, Civil Code; *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871].)

In an excellent article upon the effect of agreements reserving title to personal property by statutory provisions, which may otherwise become fixtures on land, the author says in 29 California Law Review, pages 21, 22:

"After many vicissitudes the law now is settled that in private transactions the legal character of annexed property depends upon the intention of the annexor. If the person annexing chattels to real estate intends them to become a permanent accession to the realty, they are fixtures and part of the realty in the eyes of the law. To the contrary, if the annexor's intention is that annexation shall be temporary. . . .

"Intention of permanence, then, may be express or implied. When the intention is expressed in private agreements, it is binding as between the parties; but such agreements do not defeat the rights of third parties not privy thereto *who are without notice.* . . .

"In the present state of law, however, statutory fiat plays a minor role in classifying property for purposes of taxation. . . .

"The assessor is not generally privy to the business transactions of property owners. He has but two means for obtaining reliable information regarding the legal status of annexed property. First, in his work of keeping abreast of market values of assessable property *and in keeping current his record of property ownership, he scans recorded real estate transactions. To the extent, therefore, that private*

*agreements are recorded, the assessor may be deemed to have notice of them.''* (Italics ours.)

In support of the italicized portion of the preceding statement, the author of that article cites *Southworth* v. *Edmands,* 152 Mass. 203 [25 N. E. 106, 9 L. R. A. 118], in which it is said, regarding notice to the assessor of private agreements with respect to the title to chattels annexed to real property that, since his work necessarily involves close watch of recorded property transactions, no good reason appears why the assessor should not take notice of the terms of recorded written agreements affecting the legal character of property. In that cited case it is further said that in a number of cases it is held that the terms of leases respecting the right of the lessee to remove improvements from the premises are material to the inquiry of assessors in determining whether such improvements should be classified as personal property or as fixtures attached to and made a part of the realty, for the purpose of taxation.

Liens created to secure levies of assessments or taxes may become void for failure of the assessors to take proper notice of recorded evidence of the title and character of assessed property. Statutes must be strictly complied with to create valid liens for taxes or assessments. (*Dougery* v. *Bettencourt,* 214 Cal. 455 [6 Pac. (2d) 499]; 24 Cal. Jur. 22, sec. 6.)

In construing a statute identical with section 2601 of our Public Resources Code, the Supreme Court of Montana held, in a similar case involving title to mining machinery, that the statute which ordinarily deems such machinery and equipment as ''affixed to the mine'' and an inseparable part thereof, is not applicable when the parties agree that it shall be retained by the owner thereof or the operator of the mine as separate personal property removable by him. (*Cheadle* v. *Bardwell,* 95 Mont. 299 [26 Pac. (2d) 336, 339]; *Story Gold Dredging Co.* v. *Wilson,* 106 Mont. 166 [76 Pac. (2d) 73, 77].) In the Cheadle case, *supra,* it is said in that regard:

''It is contended by plaintiff that the casing must be deemed to have been affixed to the realty, by virtue of the provisions of section 6670, Revised Codes of 1921, which reads: 'Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, *and all other machinery or tools used*

*in working or developing a mine,* are to be deemed affixed to the mine.' With this contention we do not agree. Our Code section was taken from California. It has been construed by the courts of that state, and the construction is not in accord with such construction. The California court recognized the rule that chattels may be annexed to real estate and still retain their character as personal property. *Hendy* v. *Dinkerhoff,* 57 Cal. 3 [40 Am. Rep. 107]; *Best Mfg. Co.* v. *Cohn,* 3 Cal. App. 657 [86 Pac. 829]. This court has recognized that rule in numerous instances.''

Many authorities are cited in the preceding case to support that principle.

The cases of *McNally* v. *Connolly,* 70 Cal. 3 [11 Pac 320], and *San Francisco Breweries* v. *Schurtz,* 104 Cal. 420 [38 Pac. 92], upon which the respondent relies, are not in conflict with what we have previously said regarding the binding effect upon the parties to an agreement and upon third persons with notice thereof, that title to personal property subsequently placed on the land is reserved to a proposed purchaser of the realty. Both cases were decided before the amendment to section 660 of the Civil Code. In the McNally case machinery installed in a flour mill ''with the understanding between the lessor and lessee that the latter should be at liberty to remove it'' was subsequently sold to satisfy a judgment recovered by a creditor against the lessee. The court merely said that the agreement was unimportant. But there was no evidence that the creditor ever had notice of that contract, which evidently was a mere oral agreement between the parties to the lease. It does not appear that the lease contained a declaration of that reservation of title to the machinery. There is no evidence that the lease was recorded. Evidently the creditor had no notice of the agreement. That case is not in point.

The San Francisco Breweries case, *supra,* was a suit to foreclose a mortgage executed to secure a promissory note given in payment of a lease on real property and ''all fixtures, improvements and appliances, which had been attached to or made a part thereof.'' The court properly held that ''the mortgage covered real and personal property. Such a mortgage is valid and may be foreclosed, and the real and personal property may be sold under the same decree.'' The fact that the mortgage specifically covers fixtures, improvements, ap-

pliances and other personal property refutes the claim that the mortgagor agreed that any of the property mentioned was exempt from the mortgage. That case is not in point.

We therefore conclude the findings and judgment are not supported by the evidence insofar as they purport to determine that the respondent is the owner and entitled to possession of the enumerated mining machinery and appliances which are subsequently placed on the land in reliance upon the written agreement contained in a duly acknowledged and recorded contract for sale of the mining claims.

The judgment is modified by striking therefrom the determination that plaintiff is the owner and entitled to possession of the mining machinery and appliances. As so modified, the judgment is affirmed. The appellants may recover their costs on appeal.

Ross, J. *pro tem.*, and Tuttle, J., concurred.