# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**February 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-1035** (Monongalia County 14-F-75)

**Orlandis Funderburke,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Orlandis Funderburke, by counsel Jay T. McCamic and Sally A. Frick, appeals the September 10, 2014, order of the Circuit Court of Monongalia County that sentenced petitioner for his conviction of one count of felon in possession of a firearm and one count of possession of a controlled substance. The State of West Virginia, by counsel David A. Stackpole, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arose as a result of a domestic dispute between petitioner and his former girlfriend, Amy Shaver. When the dispute occurred, Ms. Shaver owned two adjacent houses in Morgantown, one on Arch Street and one on Green Street. Ms. Shaver, her father, and other family members lived in the Arch Street house. Ms. Shaver allowed petitioner and petitioner's father to live in the Green Street house.

Sometime before August 29, 2013, the couple broke off their relationship. On August 29, 2013, petitioner confronted Ms. Shaver and then broke her phone. The next day, as Ms. Shaver left her Arch Street house, petitioner confronted her again. In response, Ms. Shaver called the police and stated that petitioner was preventing her from leaving her residence. When the police arrived, Ms. Shaver told them that petitioner had threatened her and she believed he was possibly going to get a firearm. However, she admitted that she had not seen petitioner with a gun.

The officers went to the Green Street house where they found petitioner on the porch. An officer patted petitioner down, but found no weapon. At that point, Bonita Forbes, a code enforcement officer for the City of Morgantown who had been inspecting a house nearby, arrived on the scene. One of the officers told the code enforcement officer that petitioner had allegedly threatened Ms. Shaver with a gun. At that point, the code enforcement officer told the officer that: (1) she was acquainted with petitioner and his dog because she had once found the

1

dog outside without any water; (2) she often returned to the residence to check on the dog's treatment; (3) a week or two before August 30, 2013, she stopped by the residence to check on the dog; (4) while there, she saw petitioner and another man standing near petitioner's car; (5) petitioner had a gun tucked in his pants; (6) she was six or eight feet from petitioner when she saw the gun; (7) the butt of the gun was black; and (8) petitioner went around the side of the vehicle and, when he returned, he no longer had the gun in his pants. The officers asked the code enforcement officer to write a statement to that effect. With that information, the officers sought a search warrant for the Green Street (petitioner's) house.

An officer stayed with petitioner while the search warrant was obtained. While they waited, petitioner took off his shoes. At that point, the officer saw an abnormal bulge in petitioner's right sock. When the officer inquired about the bulge, petitioner said, it was "his weed." The officer recovered a small baggie from petitioner, examined it, and then arrested petitioner for possession of marijuana and read him his rights.

Thereafter, the officers searched the Green Street house and found a .380 caliber semi-automatic pistol in a suitcase located inside a bedroom closet. The gun had six rounds in the magazine. When questioned by the police, petitioner's father stated that the room in which the gun was found was his bedroom; that he did not own the suitcase or the gun; and that petitioner had previously used the bedroom.

Petitioner was then taken to the police station for post-arrest questioning. Officer James Smith, II, conducted the interview which was video recorded. Petitioner told Officer Smith that he used to live in North Carolina, but was now living in the Green Street house; he owned a 9 mm pistol, but did not own the .380 pistol found in his residence; and he had "more marijuana." Thereafter, an officer ran the serial number of the .380 pistol and discovered it had been stolen from Charlotte, North Carolina.

On January 10, 2014, petitioner was indicted on two counts: (1) felon in possession of a firearm; and (2) possession of a controlled substance. The felon in possession of a "firearm" count did not name the type of firearm petitioner allegedly possessed, i.e., did not name a 9 mm pistol or a .380 pistol, but did note the dates of alleged possession as extending from August 15 through the date of petitioner's arrest, August 30, 2013.

Prior to trial, petitioner moved to suppress the admission of the .380 pistol and his post-arrest statements regarding his ownership a 9 mm pistol. Petitioner argued that the pistol should be suppressed because it was not found in his possession or seized from his residence (at that time, petitioner claimed that he had been living in the Arch Street house, and not the Green Street house), and he had no way of knowing who had access to the Green Street house prior to the search. As for his post-arrest statement regarding the 9 mm pistol, petitioner argued it should be suppressed because it was inadmissible "bad acts" evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence.

The circuit court held a hearing on petitioner's motion to suppress on June 4, 2014. At the hearing, petitioner's counsel admitted that the search of the Green Street house was proper. At the conclusion of the hearing, the trial court denied petitioner's motion to suppress evidence of

the .380 pistol on the ground that the reliability of the evidence was a jury issue and that is was undisputed that the search warrant was valid. As for petitioner's motion to suppress his post-arrest statement regarding the 9 mm pistol, the circuit court found that it was not Rule 404(b) evidence, but instead was evidence of the crime charged: felon in possession of a firearm.

Petitioner's trial commenced on August 21, 2014. At trial, petitioner stipulated to being a person prohibited from possessing a firearm. During the State's case-in-chief, Officer Smith testified that, when petitioner admitted to owning a 9 mm gun, he was actually admitting to owning the .380 pistol found in the Green Street house. The officer explained this statement as follows, "in my experience as a police officer . . . basically, he was giving an inch so I wouldn't go a mile. He said, well, I've got this so you can trust me; I admitted to this, you can trust me, but [the .380 pistol found is] not mine." Petitioner did not object to the questions that led to these answers or to the answers themselves. The State then questioned Officer Smith about petitioner's post-arrest statement. Petitioner objected on the ground that the videotape of the interrogation was the best evidence. The trial court overruled the objection. On cross-examination, petitioner's counsel did not use the videotape to impeach Officer Smith.

In closing, the State told the jury that it could convict petitioner of possession of a firearm based solely on the code enforcement officer's testimony that, no more than two weeks before petitioner's arrest, she saw a gun tucked into the waistband of his pants.

On August 22, 2014, the jury found petitioner guilty of felon in possession of a firearm and possession of a controlled substance.

By order entered September 10, 2014, the circuit court sentenced petitioner to five years in prison for possession of a firearm and six months in jail for possession of a controlled substance with the sentences to run concurrently. Petitioner now appeals.

On appeal, petitioner raises six assignments of error. Petitioner first argues that the circuit court erred by denying petitioner's motion to suppress evidence regarding the .380 pistol because the search warrant lacked sufficient probable cause. With regard to probable cause for a search warrant this Court has held that,

> [p]robable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime *presently* may be found at a specific location. It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the *place* or person to be searched will yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. The probable cause determination does not depend solely upon individual facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances.

Syl. Pt. 3, *State v. Lilly*, 194 W.Va. 595, 598, 461 S.E.2d 101, 104 (1995) (emphasis added).

3

Based on *Lilly*, petitioner argues that the search warrant executed for his residence was deficient because it failed to demonstrate probable cause that the .380 pistol would *presently* be found *inside* his residence given that the code enforcement officer (1) did not specifically state *when* she saw petitioner with a gun, and (2) did not see a gun *inside* the Green Street house. Thus, petitioner argues that the circuit court clearly erred in denying petitioner's motion to suppress the .380 pistol found inside the Green Street house.

This Court reviews a circuit court order resolving a motion to suppress under the following a two-tiered standard.

> [W]e first review a circuit court's findings of fact . . . under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law[]; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*Id.* at 600, 461 S.E.2d at 106 (footnote and internal citation omitted).

This assignment of error is not properly before the Court as petitioner did not claim below that the State presented insufficient probable cause for the issuance of a search warrant. *See State v. Miller*, 197 W.Va. 588, 597, 476 S.E.2d 535, 544 (1996) ("[o]rdinarily, a defendant who has not proffered a particular claim or defense in the trial court may not unveil it on appeal").

> "'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *Miller*, 194 W.Va. at 17, 459 S.E.2d at 128, quoting *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995). Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights.

*State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996). Of course, the raise or waive rule is not absolute. In *Miller*, we stated: "The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995).

> To satisfy the plain error standard, a court must find: (1) there was error in the trial court's determination; (2) the error was plain or obvious; and (3) the error affected "substantial rights" in that the error was prejudicial and not harmless. If these criteria are met, this Court may, in its discretion, correct the plain error if it

> "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

*LaRock*, 196 W.Va. at 316-17, 470 S.E.2d at 635-36 (internal citations omitted).

Here, petitioner fails to conduct a plain error analysis. Thus, we find that the circuit court did not err in granting the search warrant for petitioner's residence.

Petitioner's second, third, and fourth assignments of error challenge various evidentiary rulings at petitioner's trial. We review such assignments of error under the following standard: "'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." *State v. Cecil*, 221 W.Va. 495, 497-98, 655 S.E.2d 517, 519-20 (2007).

Petitioner's second assignment of error is that the circuit court erred by admitting Officer Smith's testimony that petitioner admitted to owning a 9 mm pistol where petitioner was charged with possession of a .380 pistol. Petitioner also argues that the State erred in entering that same testimony and the code enforcement officer's testimony (that she saw a gun tucked in petitioner's pants) because the State entered the evidence in violation of Rule 404(b) of the West Virginia Rules of Evidence to show petitioner's propensity to possess a firearm.

We first note that petitioner's assignment of error contains a false statement: that he was "charged with possession of a .380 pistol." Petitioner was not so charged given that no particular type of firearm is mentioned in petitioner's indictment; instead, the indictment merely charges petitioner with being in possession of a "firearm." With regard to petitioner's second claim, we find that the evidence regarding (1) petitioner's admission to owning a 9 mm pistol, and (2) the firearm seen tucked in his pants, was not Rule 404 evidence, but was instead evidence of the crime charged against petitioner in his indictment, i.e., "Felon in Possession of a Firearm." Hence, we find the circuit court did not abuse its discretion in allowing Officer Smith's or the code enforcement officer's testimony.

Petitioner's third assignment of error is that the circuit court erred by permitting Officer Smith to opine that, when petitioner admitted to owning a 9 mm pistol, petitioner was actually admitting to owning the .380 pistol found at the Green Street house. This assignment of error is not properly before the Court given that petitioner failed to object to the State's questions or Officer Smith's answers regarding the .380 pistol. As we explained above, the failure to raise an issue below results in the waiver of that issue on appeal.

In this same assignment of error, petitioner also argues that Officer Smith's testimony was "hearsay" and, therefore, should have been excluded. However, in his brief to this Court, petitioner fails to cite to the definition of hearsay found in Rule 801 of the West Virginia Rules of Evidence and/or to explain how or which portion of Officer's Smith's testimony satisfies the definition of hearsay found in Rule 801, A "skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health & Human Res., Child Advocate Office on Behalf of Robert*

5

*Michael B. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991). Hence, we decline to further address this assignment of error.

Petitioner's fourth assignment of error is that the circuit court erred in overruling petitioner's objection to Officer Smith's testimony regarding petitioner's post arrest interview when the video recording of the interview was the "best evidence." Rule 1002 of the West Virginia Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its *content* unless these rules or a state statute provides otherwise." (Emphasis added.) Rule 1001(b) defines a "recording consist[ing] of letters, words, numbers, or their equivalent recorded in any matter." The video recording of petitioner's interview meets the definition of a recording in Rule 1001(b) as it is "a recording" consisting of "words."

Various courts have found that "[a] party may prove the contents of a recorded conversation by the testimony of a participant in the conversation rather than by a recording, over defense counsel's objection that the recording is the best evidence of the conversation." Louise J. Palmer, Jr., et al., *Handbook on Evidence for West Virginia Lawyers* § 1001.04 at 477 (6th ed. 2015) (citing *U.S. v. Fagan*, 821 F.2d 1002, 1009 n. 1 (5th Cir. 1987)). Courts have based this ruling on the ground that "the content of the conversation is in issue, not the content of the recording." *Id.* § 1001.04 at 476 (citing *U.S. v. Bourne*, 743 F.2d 1026 (4th Cir. 1984); *Dixon-Pocahontas Fuel Co. v. Myers Grain Co.*, 71 W.Va. 715, 716, 77 S.E. 362, 363 (1913); and *State ex rel. Shatzer v. Freeport Coal Co.*, 145 W.Va. 343, 348, 115 S.E.2d 164, 168 (1960)).

In the instant case, Officer Smith testified to the content of his *conversation* with petitioner; thus, the content of the *recording* was not at issue. Thus, the circuit court did not err in overruling petitioner's "best evidence" objection. We also note that, on cross-examination of Officer Smith, petitioner had the option of using the video recording to impeach the Officer's testimony. Consequently, petitioner was not prejudiced by the circuit court's ruling.

Petitioner's fifth assignment of error is that the circuit court erred by permitting the State to argue in its closing that *petitioner* failed to present at trial the video recording of his interview with Officer Smith. Petitioner claims that, as a result, the circuit court allowed the State (1) to improperly shift the burden of production and proof to petitioner, and (2) to improperly highlight that petitioner had not testified at trial. *See* Syl. Pt. 4, *State v. Murray*, 220 W.Va. 735, 736, 649 S.E.2d 509, 510 (2007) (It is prejudicial error for the State to comment on defendant's failure to testify.).

During petitioner's closing argument, his counsel said,

The State has a pretty clear video of the incident. They've chosen not to show to you. They've chosen to allow the after-the-fact commentator tell you about what happened. . . . They didn't show you the actual nature of the conversation. They didn't – you didn't get a chance to see what inferences, what tone of voice was being used between the officer and my client. You don't know to what degree of stress somebody – my client was under. You simply don't know. You've not been allowed to consider the evidence. I would suggest that this is further grounds for

speculation as to the credibility of the officer because they have the evidence that they're not showing you.

On rebuttal, the State said, "Oh, and last but not least, the video we have – a video statement that [Officer Smith] took from [petitioner], [his counsel] has that video too." Before the State could finish its comment, petitioner objected on the ground that, "[t]he State has the burden." The court sustained the objection. Thereafter, the State asked to approach. At the ensuing bench conference, the State said, "I was going to say he had [the video recording] in order to cross-examine on that to determine the veracity of the officer's statement." The court replied, "All right. Limit it to cross-examination. [The objection] is overruled." The proceedings resumed and the State said,

> The defendant was provided with a copy of that video. . . . If [the officer] said anything that was different, any statement, [petitioner's counsel] could have cross-examined him on that issue. [Petitioner's counsel] didn't point out anything that was different than what was on the video. So when [the officer] says what [petitioner] told him on the stand today, that's what [petitioner] told him.

"A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982). *See also* Syl. Pt. 5, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). This Court considers the following four factors in determining whether a prosecutor's remarks require reversal of a conviction. The factors are:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, in part, *Sugg*, 193 W.Va. at 393, 456 S.E.2d at 474. Applying this test to the facts in the instant case, we first find that nothing in the State's comments "prejudiced the accused" or had a tendency to mislead the jury given that the State was merely highlighting the accurate statement that the defense had the option of using the video recording to impeach Officer Smith's testimony, but did not do so. Second, the remarks were isolated to one statement during the State's rebuttal and were made in response to a statement made by petitioner on closing. Third, as discussed below, the State introduced sufficient evidence for the jury to convict petitioner of the crimes charged. Fourth, there is nothing in the record on appeal to show that the comments were deliberately placed before the jury to divert their attention to extraneous matters. Further, the State's comments did not imply that petitioner bore any burden of production or proof and did not highlight that petitioner failed to testify at trial. Accordingly, we find that the circuit court did not err in overruling petitioner's objection.

Petitioner's sixth and final assignment of error is that the verdict was against the weight of the evidence and cumulative error denied petitioner his right to a fair trial.

7

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 663, 461 S.E.2d 163, 169 (1995).

With regard to the charge of felon in possession of a firearm, the State's evidence at trial showed that: (1) the code enforcement officer saw petitioner with a gun tucked in his pants no more than two weeks before petitioner was arrested; (2) petitioner and his father were the only two people living in the Green Street house; (3) petitioner's father denied owning the .380 pistol found in the Green Street house; (4) the .380 pistol was found in the room that petitioner had previously occupied; (4) the .380 pistol had been stolen from North Carolina; and (5) petitioner had moved from North Carolina to West Virginia. Viewing this evidence in the light most favorable to the State and crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, it is apparent that a rational trier of fact could have determined that the State met its burden of proof on the charge of felon in possession of a firearm.

As for the charge of possession of a controlled substance, the uncontroverted testimony was that petitioner took off his shoes and the officer observed an "abnormal bulge" in petitioner's sock. When the officer inquired about the bulge, petitioner admitted that it was "his weed." At trial, the officer testified that, based on his experience, he immediately identified the substance in petitioner's sock as marijuana. Viewing this evidence in the light most favorable to the State and crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, it is apparent that a rational trier of fact could have determined that the State met its burden of proof on the charge of possession of a controlled substance. Accordingly, neither of petitioner's convictions was against the weight of the evidence.

As for petitioner's cumulative error argument, given that we find no error herein, we find no cumulative error.

Accordingly, for the foregoing reasons, we affirm petitioner's convictions.

Affirmed.

8

**ISSUED:** February 12, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II