[Civ. No. 8050. Third Dist. Jan. 7, 1952.]

ERNEST FRY et al., Plaintiffs and Respondents, v. THE LOST KEY MINES, INC. (a Corporation), Defendant and Respondent; JOSIE GOODWIN, Third Party Claimant and Appellant.

St. Sure & Moore and Jesse M. Zimmerman for Third Party Claimant and Appellant.

Dannenbrink & Graves for Respondents.

VAN DYKE, J.—Appellant Josie Goodwin has appealed from judgments which disallowed her third party claims in two separate proceedings to foreclose chattel mortgages on certain equipment owned by The Lost Key Mines., Inc., a corporation, defendant and respondent here, which equipment had been mortgaged by that corporation to respondent's assignors. The mortgages were executed during the time certain real property owned by appellant was under contract to The Lost Key Mines, Inc., by an agreement called a lease by the parties thereto, which in substance gave to the corpora-

tion the right to extract minerals from the real property. Appellant claims ownership of the mortgaged equipment, which consists of a dragline and an electric pump, upon the ground that said equipment had become affixed to the real property and constituted a part thereof. This claim is based mainly upon the provisions of section 2601 of the Public Resources Code, formerly section 661 of the Civil Code. This section provides: "Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine." A contract between appellant and The Lost Key Mines, Inc., was entered into on July 30, 1946. It provided that there was leased to the corporation "the mineral rights in the following described real property." There was then described property consisting of almost 200 acres of land. It was provided that "the lease shall run from date hereof, unless sooner terminated by reason of the failure of the party of the second part to comply with the same." The corporation agreed to "release all land or portions of land as soon as . . . mined" and it further agreed to "start work immediately and continue until all machinery is installed necessary to handle 100 yards per day or more on placer and 25 tons per day or more on quartz." It was to pay royalties from all gold, silver or other precious metals extracted at a rate of 15 per cent gross until $35,000 had been paid, but it was agreed that this full sum must be paid within five years and three months from the date of the contract; and if so paid then the mineral rights of the corporation were to continue until the property had been mined. The Lost Key Mines, Inc., entered upon the property and brought thereon a large dragline with a 60-foot boom and a 1½-yard and a 2½-yard bucket and also a Sterling electric pump. The pump was never used in the operation of the mine, but the dragline was so used.

The corporation gave a chattel mortgage on the electric pump and a chattel mortgage upon the dragline, which mortgages were assigned to the plaintiffs and respondents, Ernest and Edward Fry. Defaults occurred and foreclosure proceedings resulted in judgments of foreclosure, which were made and entered May 26, 1950. When the sheriff of the county was proceeding under court order to sell the mortgaged items the appellant filed third party claims and after hearings were held thereon these claims were disallowed.

The only claim that appellant has asserted or could assert

to the two machines is that based upon her contention that when placed upon her property and used, as she alleged, in the mining operations of the corporation, they became affixed to the land, a part thereof, and therefore belonged to her as a part of the real property.

First as to the electric pump, the evidence is ample to the effect that it was never used in mining operations on the real property and it is apparent, therefore, that since it was neither used nor in any way physically annexed to the soil it never became a fixture. The fictional annexation referred to in section 2601 of the Public Resources Code requires as a condition that the personal property involved be used in the mining operations before it can be "deemed" to be affixed. The judgment of the trial court, therefore, disallowing appellant's third party claim to the electric pump must be affirmed.

With regard to the dragline, although there is some dispute as to the extent of use it is clear from the evidence that there was at least some use made of the machine in mining operations upon the appellant's land, and consequently that condition of fictional annexation was complied with. However, it by no means follows that by virtue of the code section all personal property that is brought upon mining property and used in mining becomes a fixture so that the title leaves its former owner and vests in the owner of the real property. The code section declares that personal property used in mining is to be "deemed" to be affixed. The same language is used in section 660 of the Civil Code, which defines fixtures generally. It is therein provided that a thing is "deemed" to be affixed to land when it is physically attached in certain ways described in the section. Section 2601 substitutes use in mining operations for physical attachment and when this condition has been met, fixation is "deemed" to have occurred just as it is "deemed" to have occurred under the Civil Code section when physical attachment has occurred. On proof of either, a prima facie case is made for the one claiming that the article has become a fixture and a part of the real property. But the prima facie case thus made is rebuttable. Montana has the same statute as is contained in our section 2601 of the Public Resources Code, and in construing the statute of that state its Supreme Court in the case of *Story Gold Dredging Co.* v. *Wilson*, 106 Mont. 166 [76 P.2d 73, 77], said that in a previous case (*Montana Elec. Co.* v. *Northern Valley Min. Co.*, 51 Mont. 266 [153 P. 1017, 1018]) it had given con-

sideration to the meaning and purport of the statute. Said the court:

". . . The precise question there under consideration was whether certain machinery used in the operation of the mine had become a part of the real estate. The court there declared: '(1) Whether that would otherwise be personal property has become a fixture by reason of its attachment to the soil is primarily a question of intention on the part of the person attaching it; (2) the attachment in the manner indicated in our Code sections above raises a presumption that the one who made the attachment intended the thing affixed to become a part of the realty; this presumption, however, is a disputable one; (3) as a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty.' . . .

"Considering only the facts, namely, that the dredge was mining machinery placed on mining ground and used for working and developing the mine, and applying section 6670, *supra,* [the same as our Section 2601 of the Public Resources Code] the disputable presumption arises to the effect that the dredge became a part of the real property. *Cheadle* v. *Bardwell,* 95 Mont. 299 [26 P.2d 336]. . . .

. . . . . . . . . . . . .

"Opposed to the disputable presumption which we have noticed are certain facts, namely: Plaintiff, at great expense to it, placed this dredge upon the land of the defendant. The land was mortgaged. Plaintiff did not own the land and had no interest in it other than the rights accorded to it by the lease to dredge the land. It was contemplated by the contract that at some time in the future all of the ground capable of being profitably worked would be dredged, and the contract performed and ended. The dredge was not physically attached to the land. . . .

. . . . . . . . . . . . .

"When we attempt to determine the intention of the parties in accordance with the foregoing rules, we find that different inferences may be drawn from the evidence by different reasonable men, and, hence, a question of fact is presented which can be determined only by the jury." (See, also, *Hendy* v. *Dinkerhoff,* 57 Cal. 3 [40 Am.Rep. 107], and *Oroville-Wyandotte Irr. Dist.* v. *Ford,* 47 Cal.App.2d 531 [118 P.2d 340], citing *Story Gold Dredging Co.* v. *Wilson, supra.*)

Considering that the use of machinery in mining operations does not necessarily compel the conclusion that it has become a part of the land, we turn to the rules by which the ultimate question of whether such machinery is a fixture or not is to be determined. We find that we must consider the intention of the parties, the adaptability of the article in question to the normal uses of the land, the character of the chattel, the purpose to which it is to be put and the relations of the parties claiming its ownership. These are the usual rules applied generally in determining whether chattels have by reason of fixation become a part of the land. In *M. P. Moller, Inc.* v. *Wilson*, 8 Cal.2d 31 [63 P.2d 818], the Supreme Court, in discussing whether or not a pipe organ that had been installed in a residence was a fixture so as to pass with the land declared:

". . . This court has recognized the test of intention to make the article a permanent addition to the realty as manifested by the physical facts, and has accepted the character of the annexation and the use for which the article is designed as subsidiary elements employed for the purpose of testing the intention of permanency. . . . Thus whether an article is or was physically affixed to the building is only one of the criteria in determining whether there was an intention to make it a permanent accession to the real property.

"Annexation by weight and gravity, therefore, is not always alone a sufficient indication of an intent to make the article a permanent fixture and part of the realty. It must also appear from the nature of the chattel that if used for the purpose for which it was designed it would naturally and necessarily be annexed to and become a permanent and integral part of some realty; in other words, that it would become essential to the ordinary and convenient use of the property to which it was annexed."

And even though the character of annexation of the organ was such that ordinarily it might well have been considered that it was intended it should become a part of the building and so a part of the land, nevertheless the Supreme Court said:

"With this record before us we are of the opinion that the court was justified in concluding that the facts of installation and removal did not indicate that the organ lost its inherent character of personal property such as any other furniture or musical instrument designed for personal enjoyment or entertainment and not as an essential, integral or necessary part of real property."

■ In the instant case the following facts must be considered. The dragline was not a machine primarily designed for or generally used in mining. These machines are more often seen in use away from rather than on or in a mine. They are heavy and cumbersome mechanical units that are automotive, although when moving from job to job they are often transported on other automotive equipment or by train or boat. They are specially designed, not for mining, but for general excavating and dirt-moving work. In this case the dragline involved was brought upon the appellant's land not solely by its own power but with the aid of additional machines and it would have to be, according to the testimony, removed in the same fashion. But it is common knowledge that these machines are often so moved from job to job. It was not a machine designed or adapted to being physically attached to land or buildings. The relations between appellant and The Lost Key Mines, Inc., as declared in the contract between them, were such that it was clearly the purpose of the parties that no title to the real property should pass to the corporation; that as soon as an area had been mined and the precious metals extracted the land would be abandoned by the corporation to appellant; that in the end if the contract was fully performed appellant's share of the precious metals in the land would have been received by her, the balance would have been taken by the corporation, and it would cease to have any interest, possessory or otherwise, in the land. We cannot believe it to have been the intent of either party to this contract that such equipment as a dragline would ever have become a part of the land. At least such an inference could reasonably have been drawn by the trial court, and that is sufficient here.

We hold that the record supports the judgments appealed from and they are, therefore, affirmed.

Adams, P. J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied February 1, 1952, and appellant's petition for a hearing by the Supreme Court was denied March 6, 1952.