[No. S007833. Nov. 30, 1989.]

CROCKER NATIONAL BANK, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and
Appellant.

**COUNSEL**

Morrison & Foerster, William Alsup and Charles J. Moll III for Plaintiff and Appellant.

Philip M. Plant, Barbara L. Rosenfeld, Ehrman, Flavin, Devine & Baker, Sean Flavin, Kenneth A. Ehrman, R. Blair Reynolds, Stephens, Berg, Lasater, Schulman & Rogers and Mark G. Ancel as Amici Curiae on behalf of Plaintiff and Appellant.

Louise H. Renne, City Attorney, and John J. Doherty, Deputy City Attorney, for Defendant and Appellant.

Donald L. Clark, County Counsel (Santa Clara), and Thomas William Cain, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

MOSK, J.—We granted review to address "[o]ne of the most controversial questions of classification" for purposes of taxation in the law of fixtures, that of electronic data processing equipment. (1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1988) § 3:04, p. 10; see *Allstate Ins. Co.* v. *County of Los Angeles* (1984) 161 Cal.App.3d 877 [207 Cal.Rptr. 888]; *Security Data, Inc.* v. *County of Contra Costa* (1983) 145 Cal.App.3d 108 [193 Cal.Rptr. 121]; *Exchange Bank* v. *County of Sonoma* (1976) 59 Cal.App.3d 608 [131 Cal.Rptr. 216]; *Bank of America* v. *County of Los Angeles* (1964) 224 Cal.App.2d 108 [36 Cal.Rptr. 413, 6 A.L.R.3d 491]; see also Cal. Code Regs., tit. 18, §§ 122.5, 124 [purporting to codify the case law].)

In this case we address that question by considering two issues. The first is: the test for classifying an item of personal property as a fixture of the host real property for purposes of taxation. The second is: the standard of review on appeal after such a determination by the trial court.

As will appear, we conclude the classification should turn on whether a reasonable person would consider the item in question to be a permanent part of the host real property, taking into account annexation, adaptation, and other objective manifestations of permanence. And we conclude the trial court's determination should be reviewed independently.

## I. THE FACTS

In six actions later consolidated for discovery and trial, Crocker National Bank (hereafter Crocker) sought refund of certain real property taxes paid to the City and County of San Francisco (hereafter San Francisco) in six tax years. San Francisco had levied the taxes on certain electronic data processing equipment owned by Crocker and located in a leased building at 155 Fifth Street. For tax purposes, "real property" includes "[i]mprovements" (Rev. & Tax. Code, § 104, subd. (c)), and "[i]mprovements" includes "fixtures" (*id.*, § 105, subd. (a)). San Francisco had classified the equipment as fixtures. As a bank, Crocker was subject to taxation on its real property, but was exempt as to its personal property. (See Cal. Const., art. XIII, § 27; Rev. & Tax. Code, §§ 23181-23182.)

In this litigation, Crocker claimed the equipment could not properly be classified as fixtures. San Francisco insisted it could. It also maintained, inter alia, that (1) a refund for taxes paid in two of the years was barred for failure to exhaust administrative remedies, and (2) a refund for the first installment of the taxes paid in each of the years was barred for failure to file a claim for refund within the time prescribed by Revenue and Taxation Code section 5097.

The six consolidated actions were tried to the superior court sitting without a jury. After trial, the court issued a statement of decision. It resolved the procedural questions identified above in favor of Crocker, but determined the substantive question of classification in favor of San Francisco. In accordance with its decision, it entered judgment for San Francisco. Crocker appealed and San Francisco cross-appealed.

The Court of Appeal affirmed. It reviewed the superior court's classification as the resolution of a question of fact under the substantial-evidence test, and under that test upheld the determination. Because of that result, it did not address the procedural questions.

Crocker then petitioned for review on the substantive question of classification. In an answer, San Francisco opposed Crocker's request but presented the procedural questions as additional issues in the event review was granted. Because of the importance of the substantive question, we granted review.

## II. DISCUSSION

Crocker contends the Court of Appeal erred by upholding the superior court's classification of its electronic data processing equipment as fixtures for purposes of taxation. Before we can properly consider the claim, however, we must address and resolve the issues of the applicable fixtures test and the proper standard of review.

### A. *The Fixtures Test*

We first consider the test for classifying an item of personal property as a fixture of the host real property for purposes of taxation.

As noted above, Revenue and Taxation Code section 104, subdivision (c), defines "real property" to include "[i]mprovements." And Revenue and Taxation Code section 105, subdivision (a), defines "[i]mprovements" to include "fixtures." ■■ ■■ ■■ ■ The latter provision apparently refers

back to Civil Code section 660. (Horowitz, *The Law of Fixtures in California—A Critical Analysis* (1952) 26 So.Cal.L.Rev. 21, 57 [hereafter Horowitz].)[1] That provision refers back, in turn, to the seminal decision in *Teaff* v. *Hewitt* (1853) 1 Ohio St. 511. (See code comrs. notes foll. 1 Ann. Civ. Code, §§ 660, 1013 (1st ed. 1872, Haymond & Burch, comrs.—annotators) pp. 202-203, 285-286.)

Properly read, *Teaff* v. *Hewitt* stands for the broad proposition that the classification of fixtures does not depend ultimately on how or indeed whether an item of personal property is physically attached to the host real property, but rather on the nature of the underlying legal problem and the policy considerations implicated in the solution of that problem.

In that case, the legal problem was the construction of a conveyance that did not mention certain items—did the conveyance transfer interest in the items or not? The policy considerations were those common to all such problems—how to determine what the parties would have decided had they thought about the matter. The court there held that "the united application of the following requisites will be found the safest criterion of a fixture: [¶] 1. Actual annexation to the realty, or something appurtenant thereto. [¶] 2. Appropriation to the use or purpose of that part of the realty with which it is connected. [¶] 3. The intention of the party making the annexation, to make the article a permanent accession to the freehold—this intention being inferred from the *nature* of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." (1 Ohio St. at pp. 529-530, italics in original.) The court made plain that the third "requisite" was the crucial and indeed ultimate factor: "In no case is a fixture created without the apparent intention of the party making the annexation to make a permanent accession to the freehold." (*Id.* at p. 533.) The court impliedly defined "intention" not as the subjective intent of the annexor but the objective "intent" that would be inferred by a reasonable grantee or mortgagee. As stated, it is the *apparent* intention that is crucial.

Thus, when the legal problem to be solved involves the construction of a conveyance, the rule of *Teaff* v. *Hewitt* is reducible to the test, "what does

[1] Civil Code section 660 provides in relevant part that "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or embedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws . . . ." The provision has been called "simply a rule for general guidance" (*Gosliner* v. *Briones* (1921) 187 Cal. 557, 559 [204 P. 19]) and, strictly read, merely establishes a rebuttable presumption of affixation (*Fry* v. *Lost Key Mines* (1952) 108 Cal.App.2d 568, 571 [239 P.2d 69]).

the grantee or mortgagee, as a reasonable man, think he is receiving under the conveyance. Those chattels on the land will be included in a conveyance of the land which look like they would come along in a conveyance of the land, based upon objective factors of annexation to the land, adaptability for use with the land as an economic entity, and other objective manifestations of the intent of the land owner to include them . . . ." (Horowitz, *supra,* 26 So.Cal.L.Rev. at p. 28.)

When, however, the legal problem to be solved involves the classification of an item of personal property for purposes of taxation, "The policy considerations . . . do not seem to be compelling either way. The most important factor would seem to be to have a certain and workable rule under which both the tax assessor and the person subject to the tax can most efficiently operate." (Horowitz, *supra,* 26 So.Cal.L.Rev. at p. 57.) The rule of *Teaff* v. *Hewitt* is such. (See Horowitz, *supra,* at p. 25.) And indeed, it has been followed by the case law in its broad lines. (See, e.g., *Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303, 309 [217 P.2d 936]; see also *Trabue Pittman Corp.* v. *County of L.A.* (1946) 29 Cal.2d 385, 397-398 [175 P.2d 512] [holding that "in matters relating to taxation in this state, rules . . . conforming to those used in determining what constitutes fixtures as between grantor and grantee, vendor and vendee, or mortgagor and mortgagee, should apply . . ."].)

■ Accordingly, in California "It is well settled that in determining whether an article constitutes a fixture, three criteria must be taken into consideration: (1) the manner of its annexation to the realty; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention with which the annexation is made [citations]. . . . 'It is also settled that for tax purposes the "intention" must be determined by the physical facts or reasonably manifested outward appearances . . . .' [Citation.] [¶] In resolving whether an article placed on the premises constitutes a fixture or personal property, the aforelisted three elements do not play equal parts. In making the determination in a particular case the element of intent is regarded as a crucial and overriding factor, with the other two criteria being considered only as subsidiary ingredients relevant to the determination of the intent." (*Seatrain Terminals of California, Inc.* v. *County of Alameda* (1978) 83 Cal.App.3d 69, 74-75 [147 Cal.Rptr. 578], citing cases.)

■ Because the legal problem here is taxability and not, as in *Teaff* v. *Hewitt,* the construction of a conveyance, and because the "intent" crucial here is constructive and not actual, the test reduces itself to whether a reasonable person would consider the item to be a permanent part of the

property, taking into account annexation, adaptation, and other objective manifestations of permanence. (See *Trabue Pittman Corp.* v. *County of L.A., supra,* 29 Cal.2d at pp. 391-398; Horowitz, supra, 26 So.Cal.L.Rev. at pp. 57-58.)

### B. *The Standard of Review*

The second issue to be addressed and resolved is the standard of review on appeal for a trial court's classification of a particular item of personal property as a fixture of the host real property for purposes of taxation. Our analysis is guided by the following general principles.

■ Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. (See generally *People* v. *Louis* (1986) 42 Cal.3d 969, 985-987 [232 Cal.Rptr. 110, 728 P.2d 180].)

■ Thus, it is plain that on appeal a trial court's classification of a particular item as a fixture must be reviewed independently. The question of classification is mixed: it involves the application of the rule to the facts and the consequent determination whether the rule is satisfied. And the question is predominantly legal: the pertinent inquiry bears on the various policy considerations implicated in the solution of the problem of taxability, and therefore requires a critical consideration, in a factual context, of legal principles and their underlying values. (See generally *Goldie* v. *Bauchet Properties* (1975) 15 Cal.3d 307, 316 [124 Cal.Rptr. 161, 540 P.2d 1, 99 A.L.R.3d 794] [holding that "[u]nder California law, the classification of an object as a 'fixture' or as 'personal property' is not a factual description of the object, but a statement of a legal conclusion or result as to entitlement to the object"]; Horowitz, *supra,* 26 So.Cal.L.Rev. at pp. 22-23 [to similar effect].)

Our conclusion is supported by the following consideration. Taxation must, of course, be uniform and the tax laws uniformly applied. (See *Trabue Pittman Corp.* v. *County of L.A., supra,* 29 Cal.2d at pp. 392-393, 397-398.)

Uniformity depends on proper classification. And proper classification is furthered through the application of independent review.

We recognize several cases state broadly that the question of classification is one of fact and its resolution is reviewed under the substantial-evidence test. (E.g., *Security Data, Inc.* v. *County of Contra Costa, supra,* 145 Cal.App.3d at p. 118; see, e.g., *Bank of America* v. *County of Los Angeles, supra,* 224 Cal.App.2d at pp. 113-114. But see *Allstate Ins. Co.* v. *County of Los Angeles, supra,* 161 Cal.App.3d at pp. 885-892 [implying that the question is mixed and its resolution is reviewed independently].) None of those cases, however, provides or cites persuasive reasoning in support. In any event, when properly read, each appears to hold only that classification implicates factual questions and predominantly factual mixed questions, and that the resolution of *those* questions is reviewed under the substantial-evidence test. Such a holding, of course, is thoroughly consistent with the discussion set forth above.

### C. *Analysis*

We turn now to the case at bar. After careful consideration, we are of the opinion that the Crocker's claim of error is meritorious.

The Court of Appeal erred by reviewing the superior court's classification of Crocker's electronic data processing equipment as fixtures for purposes of taxation as the resolution of a question of fact under the substantial-evidence test. For the reasons stated, it should have reviewed the determination independently as the resolution of a predominantly legal mixed question. San Francisco argues to the contrary. In doing so, it merely relies on the broad statement of the case law referred to above. But as we have explained, that statement is insufficient.

■ The Court of Appeal also erred by upholding the superior court's classification. On independent review, we conclude the classification was improper.

The record establishes a number of facts beyond dispute. The equipment at issue comprises scores of separate items, including central processing units and various kinds of so-called "peripheral" devices. The superior court expressly found that "most of the . . . equipment herein can be characterized as 'general purpose,' 'off-the-shelf,' and 'fungible[]' . . . ." The evidence shows that the rest cannot reasonably be characterized otherwise.

As for annexation, the equipment was not physically attached to the building through permanent connections, as by means of cement, plaster, nails, bolts, or screws. Rather, it was attached merely through standardized "quick-disconnect" plugs that were inserted into the power source. Also, the items were readily movable without damage to themselves or to the building, and were in fact readily moved into, around, and out of, the structure. This was true of large central processing units, which weighed several thousand pounds and were rolled about on built-in casters; it was also true of small peripheral devices, which weighed only a few pounds and were carried by hand. Although certain pieces were connected to each other in "systems" or "groupings," they were joined not by permanent links but by standardized "quick-disconnect" cables.

As for adaptation, the equipment was not designed or modified for the building and the building was not designed or modified for the equipment. It is true that the building was planned and constructed as an operations or data processing center, and that safety, security, cooling, power, and fire-suppression systems were designed into, or added onto, the structure at least in part to accommodate electronic data processing equipment. Such facts, however, are not dispositive of the question of permanence. If they were, modern office buildings would automatically transform modern office equipment, such as telecommunication and reproduction systems, into fixtures. Obviously, they do not.

Finally, there are no other objective manifestations of permanence that are sufficient to outweigh the manifestations revealed by the evidence bearing on annexation and adaptation—viz., that the equipment did *not* constitute a permanent part of the building. This is not to say that certain of the so-called "fixture factors" identified in the case law are not applicable on this record, or that those factors could not point toward a determination of permanence in a given case. But the "fixture factors" are merely a guide for the discovery and analysis of the facts of social and economic life—on which, of course, classification ultimately depends. Here, those facts compel a determination that the equipment did not constitute a permanent part of the building.

In arriving at its decision, the superior court rested ultimately on two broad factors: the interrelation between the purpose and structural form of the building (or at least parts of it) with the capacity and physical characteristics of the equipment at issue; and the weight and size of the equipment when considered as one or more large "systems" or "groupings." Although those factors are not insignificant, they are not dispositive either singly or

together in this case, in which the evidence shows that the items in question were readily movable and were in fact readily moved.

Accordingly, we conclude that a reasonable person, taking into account annexation, adaptation, and other objective manifestations of permanence, would not consider the equipment at issue to constitute a permanent part of the building. Again San Francisco argues to the contrary. It claims that the law and the evidence support the classification below. But as shown above, they do not. It also claims in effect that the result here is inconsistent with results in similar cases. Our review of the case law compels rejection of the point.

For example, in *Bank of America* v. *County of Los Angeles, supra,* 224 Cal.App.2d 108, which was decided in 1964, the court classified as fixtures certain electronic data processing equipment in bank buildings. But the equipment and buildings, and the connections between them, do not appear to be similar in that case and in this: there apparently was more permanent attachment and mutual adaptation in that case than here. In any event, at the time relevant here a reasonable person would generally view electronic data processing equipment as simply office equipment and as such not a permanent part of the host real property. (See *Allstate Ins. Co.* v. *County of Los Angeles, supra,* 161 Cal.App.3d at p. 891.) A quarter of a century ago, however, such a person might well have held a different view.

Also, in *San Diego T. & S. Bank* v. *San Diego* (1940) 16 Cal.2d 142 [105 P.2d 94, 133 A.L.R. 416], we classified as a fixture a vault door with a metal frame that was cemented into the opening of a concrete vault in a bank, and in *Trabue Pittman Corp.* v. *County of L.A., supra,* 29 Cal.2d 385, we similarly classified a counterline set into the concrete floor of a bank. (See *Simms* v. *County of Los Angeles, supra,* 35 Cal.2d 303 [following the cases cited].) A reasonable person might well consider vault doors and counterlines to be permanent parts of the host real property: such items have clearly been integrated into the structure. But a reasonable person would not hold such a view with regard to modern electronic data processing equipment: such items have just as clearly *not* been so integrated.

Finally, in *Southern Cal. Tel. Co.* v. *State Board* (1938) 12 Cal.2d 127 [82 P.2d 422], we classified as fixtures so-called "central office" equipment installed in a telephone company's central offices; in *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69, the court similarly classified two 750-ton cranes running on specially installed rails embedded into a wharf; and in *Specialty Restaurants Corp.* v. *County of Los Angeles* (1977) 67 Cal.App.3d 924 [136 Cal.Rptr. 904], the court similarly

classified the Queen Mary, which was held fast to a pier as a tourist attraction, was incapable of self-propulsion, and was enclosed by a large rock dike. A reasonable person might well consider "central office" equipment, the cranes, and the Queen Mary to be permanent parts of the host real property: in each case, the realty and the personalty are uniquely adapted the one to the other. But a reasonable person would not hold such a view with regard to modern electronic data processing equipment: mutual adaptation is lacking when, as here, the items of personal property are basically fungible.[2]

## III. DISPOSITION

As we have explained, the Court of Appeal erred as to the substantive question of the classification of Crocker's electronic data processing equipment as fixtures for purposes of taxation. Because of the result it reached, it did not address the procedural questions involving exhaustion of remedies and Revenue and Taxation Code section 5097. Although these issues may affect the outcome of the cause, they do not warrant review by this court. Accordingly, we decline to address them and direct the Court of Appeal to consider them in the first instance on remand.

---

[2] In this litigation, the question of the applicability of *Allstate Ins. Co.* v. *County of Los Angeles, supra,* 161 Cal.App.3d 877, has loomed large in both the superior court and the Court of Appeal. The *Allstate* court held that "standardized off-the-shelf, general purpose computers and computer components, placed in general purpose office buildings, and connected to a power source by means of standardized plugs, and to each other by means of standardized cables, are and remain personalty regardless of whether or not use of a computer is essential to efficient and competitive operation of the business in which they are employed. Minor structural alterations to the realty in which such computers are situated, such as movable partitions or flooring, supplemental air conditioning units, and 220-volt wiring, do not alter the character of such computers from personalty to realty." (*Id.*, at pp. 891-892.) Crocker's position was that *Allstate* governed. San Francisco's was that it did not: the building at 155 Fifth Street it claimed, was not a "general purpose office building," but rather a "special purpose building." The superior court agreed with San Francisco and so did the Court of Appeal.

In view of the discussion presented above, we need not, and do not, address the question whether *Allstate* is applicable here. We note in passing, however, that its holding appears sound under the fixtures test set forth in the text. The *Allstate* court impliedly recognized that at least in the general case, a reasonable person would not consider office equipment to be a permanent part of the host real property: annexation, adaptation, and other objective manifestations of permanence are minimal. (See 161 Cal.App.3d at p. 891.) The court also recognized that today electronic data processing equipment generally falls within the broad category of office equipment. (*Ibid.*)

Crocker and its amici curiae urge us to adopt the *Allstate* holding as the fixtures test specifically applicable to electronic data processing equipment, saying that it is suited to the task and will guarantee uniformity of classification. We decline to do so. The holding is not sufficiently broad. Also, it might well guarantee little more than *lack* of uniformity by allowing classification—as below—on the basis of factual distinctions having little or nothing to do with whether a reasonable person would consider the items in question to constitute a permanent part of the host real property.

The judgment of the Court of Appeal is reversed and the cause is remanded to that court for proceedings consistent with our opinion.

Lucas, C. J., Broussard, J., Panelli, J., Eagleson, J., Kaufman, J., and Kennard, J., concurred.

The petition of appellant Crocker National Bank for a rehearing was denied February 1, 1990.