[No. D052802. Fourth Dist., Div. One. Mar. 24, 2009.]

RANDALL K. McAVOY et al., Cross-complainants and Respondents, v.
DAIL W. HILBERT, Cross-defendant and Appellant;
SIDNEY H. LEVINE et al., Respondents.

**COUNSEL**

Horwitz, Cron & Jasper and Bernard C. Jasper for Cross-defendant and Appellant.

The Law Offices of Charles D. Nachand, Charles D. Nachand and Richard B. Hudson for Cross-complainants and Respondents.

David J. Gallo for Respondents.

**OPINION**

**NARES, J.**—In this action arising out of the sale of a woodworking business owned by Randall K. McAvoy and Trudy K. Esther McAvoy (together, the McAvoys), together with the real property upon which the business operated, Dail W. Hilbert, the broker on the transaction, appeals from an order denying his petition to compel arbitration. The court denied the petition on the basis that (1) the arbitration clause in Hilbert's open listing agreement with the McAvoys failed to meet the statutory disclosure requirements of Code of Civil Procedure[1] section 1298; and (2) there was a strong possibility of conflicting rulings with regard to the nonarbitral portions of the action, and therefore the court, acting in its discretion under section 1281.2, elected to not enforce the arbitration clause.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

On appeal, Hilbert asserts the court erred in denying his petition to compel arbitration arguing (1) section 1298 does not apply to an open listing agreement for the sale of a business, as it was not a "real property sales transaction[]"; and (2) there was no possibility of inconsistent rulings so as to justify denying enforcement of the agreement to arbitrate.

We conclude the open listing agreement in this matter is a "real property sales transaction" subject to the statutory disclosure requirements of section 1298 because it is a listing agreement between a principal and agent for the sale of real property that is part of a larger transaction for the sale of a business. Therefore the court did not err in denying Hilbert's motion to compel arbitration, and we affirm the court's order on that basis. Accordingly, we need not determine if the court erred denying the petition to compel arbitration by also finding there was a possibility of inconsistent rulings.

## FACTUAL AND PROCEDURAL BACKGROUND

The McAvoys, in their capacity as trustees of a family trust, owned a commercial building (the property) that housed their woodworking business (the business) and four tenants. The McAvoys sold the property and business to Charles Hughes, who formed two entities—Charvania Investments, LLC (Charvania), and Willster Construction, Inc. (Willster)—for the transaction. In June 2004 Charvania bought the property for $2.7 million, and Willster bought the business for $750,000.

Hilbert, a licensed real estate agent, was the broker on the sale. As part of the transaction, the McAvoys executed an open listing agreement with Hilbert. The agreement specified it was for the sale of "McAvoy Construction, Inc.," and specified the square footage of the building that housed the business, as well as the base monthly rental for the tenants occupying the premises. The listed purchase price for the business was $750,000. The agreement also stated that as part of the transaction there was "Real estate available and Seller agrees to pay Broker a commission of Four percent (4%) of the purchase/lease amount." The open listing agreement stated that the McAvoys had engaged Hilbert "to dispose of the above described business assets." The open listing agreement contained an arbitration clause that provides: "Any dispute relating to this Agreement shall be decided by binding arbitration as provided by the California Code of Civil Procedure, beginning at section 1280, and shall include full rights of discovery."

Hilbert prepared the purchase agreement on the sale to Charvania and Willster, which included both the business and the real estate, and disclosed that Hilbert was acting as a broker for both the seller and buyers. The escrow instructions for the transaction also disclosed Hilbert was acting as the broker for both the buyers and seller. It also showed Hilbert was to receive a commission in the amount of $198,000, representing 12 percent of the purchase price for the business, and 4 percent of the sale price of the real estate.

The McAvoys carried back a promissory note of $1 million on the real estate and $150,000 on the business. Both were secured by the real property and were prepared by Hilbert. The Charvania note contained a prepayment penalty and both notes contained provisions for late fees.

Hughes was unsuccessful in the business and fell behind on payments to the McAvoys. The McAvoys recorded a notice of default, and Hughes listed the property for sale. Sidney H. and Judith Levine (the Levines) agreed to buy the property and entered into a lease with Willster based on Hughes's purported verbal representation that Charvania would use the sale proceeds to infuse capital into Willster. Escrow closed in June 2006, paying all secured liens, including the McAvoys' notes.

After the close of escrow, Willster shut its doors and, along with Hughes, filed for bankruptcy. The Levines were left with an abandoned building but still were required to make payments on the loan they obtained to finance the purchase.

In 2007 the Levines, in their capacity as cotrustees of their family trust, filed suit against various parties, including the McAvoys, against whom they asserted causes of action under California's Uniform Fraudulent Transfer Act, Civil Code section 3439 et seq. The Levines alleged they were creditors of Willster and Charvania and that the payments they made to the McAvoys should be set aside as they were "not supported by receipt of 'reasonably equivalent value.' " Their damages were stated as "the difference between the $750,000 which Willster paid for the [business], and the Actual value of the [business] at the time of the 2004 transaction." They also alleged they were entitled to set aside prepayment penalties in the amount of approximately $42,000 and late fees in the amount of approximately $42,000 collected by the McAvoys from Charvania on the note for the sale of the property, alleging they were unenforceable.

The McAvoys cross-complained against Hilbert, asserting claims for breach of contract, breach of fiduciary duty, negligence, indemnity, contribution and declaratory relief. The McAvoys alleged, among other things, that Hilbert was negligent and breached his fiduciary duties in preparing the notes and deeds of trust, making them subject to the claims by the Levines seeking to set aside payments made under those loans. They further alleged, under the doctrine of "tort of another," that his tortious conduct caused them to incur attorney fees in defending the Levines' action.

In January 2008 Hilbert brought a motion to compel arbitration based upon the arbitration clause in the open listing agreement. The court denied the motion. In doing so, the court first found "[t]he arbitration provision does not comply with [section 1298] because it did not include a separate heading, it was not initialed by both parties, nor was it set out in at least 10 point bold type or contrasting red print in at least an 8 point type." The court also found that the motion to compel arbitration should be denied because "[t]here is a strong possibility of inconsistent rulings between the arbitrator and this court based upon the intertwining issues between the complaint and cross-complaints. The underlying complaint and first amended complaint involve the activities surrounding the sale of the industrial property in 2004. The cross[-]complaint involves the preparation of documents, including the various loan documents, prepared by Hilbert."[2]

This timely appeal followed.

## DISCUSSION

### SECTION 1298, SUBDIVISION (b)

#### A. Standard of Review

Because Hilbert asserts the open listing agreement is not subject to section 1298 as a matter of law, and the facts concerning the language of that agreement are not in dispute, we review this issue de novo. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

#### B. Analysis

Section 1298, subdivisions (b) and (c) provide: "(b) Whenever any contract or agreement between principals and agents in *real property sales transactions, including listing agreements,* as defined in Section 1086 of the Civil

---

[2] A great deal of the court's discussion in its ruling is devoted to the issue of whether section 1298 was preempted by the Federal Arbitration Act. However, Hilbert does not raise that issue in his briefs on appeal, apparently conceding that in this case, it is not.

Code, contains a provision requiring binding arbitration of any dispute between the principals and agents in the transaction, the contract or agreement shall have that provision clearly titled 'ARBITRATION OF DISPUTES.' [¶] If a provision for binding arbitration is included in a printed contract, it shall be set out in at least 8-point bold type or in contrasting red in at least 8-point type, and if the provision is included in a typed contract, it shall be set out in capital letters. [¶] (c) Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provision described in subdivision (a) or (b), and immediately following that arbitration provision, the following shall appear: [¶] 'NOTICE: BY INITIALLING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALLING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.' [¶] 'WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.' [¶] *If the above provision is included in a printed contract, it shall be set out either in at least 10-point bold type or in contrasting red print in at least 8-point bold type, and if the provision is included in a typed contract, it shall be set out in capital letters.*" (Italics added.)

Civil Code section 1086, subdivision (f) provides: "A 'listing' is a written contract between an owner of property and an agent by which the agent has been authorized to sell the property or to find or obtain a buyer." Civil Code section 1086, subdivision (f)(3) provides: "An 'open listing' is a listing which grants no exclusive rights or priorities to the listing agent, and a commission is payable to the agent only if the agent procures and presents to the owner an enforceable offer from a ready, able, and willing buyer on the terms authorized by the listing or accepted by the owner, before the property is otherwise sold either through another agent or by the owner directly and before the listing expires by its terms or is revoked."

Hilbert does not contend the open listing agreement complied with section 1298. Rather, he argues the statute does not apply to the sale of a business, even if real property is also sold as a part of that transaction. This contention is unavailing.

By its plain language, section 1298 applies to *any* agreement, including "listing agreements," such as the one here, for "real property sales transactions." Clearly the open listing agreement constituted such a transaction as it involved two separate sales: (1) sale of the business for $750,000; and (2) and sale of the *real property* for $2.7 million. Thus, the real property sales portion of the transaction was not merely "ancillary" to the transaction, as Hilbert contends. In monetary terms, 78 percent of the transaction was a "real property sales transaction." Further, the sale price for the business was secured by a carry-back promissory note on the real property. It was part of a single escrow and the majority of Hilbert's commission came from the real property sales transaction. Hilbert prepared the sale and financing documents and acted as a broker for both the buyer and seller. This is exactly the type of transaction contemplated by section 1298.

Moreover, the real property was not even an asset of the business. As Hilbert himself notes in his opening brief, the real property was owned by a trust. The business was owned by a separate corporation. Thus, the transaction was not solely for the sale of a business, with the real property merely a portion of the assets of that business. The open listing agreement was, under the plain meaning of the term "real property sales transactions," subject to section 1298.

Hilbert asserts that interpreting section 1298 in such a fashion "would bankrupt countless businesses and entrepreneurs in what they thought was affordable arbitrations" and "discourage arbitration by creating uncertainty regarding the enforceability of arbitration provisions." However, parties to real property sales transactions such as the present one can easily avoid Hilbert's dire predictions by complying with the requirements of section 1298, which, as we have explained, by its clear terms applies to open listing agreements involving the sale of real property such as the agreement in this action. Accordingly, the court did not err in denying Hilbert's petition to compel arbitration based upon the open listing agreement's failure to comply with the disclosure requirements of section 1298, and we need not reach the issue of whether the motion was also properly denied based upon the court's finding there was a danger of inconsistent rulings.

## DISPOSITION

The order denying Hilbert's petition to compel arbitration is affirmed. The McAvoys shall recover their costs on appeal.

Benke, Acting P. J., and McIntyre, J., concurred.