# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

ANDRES QUINONEZ REYES,
Defendant and Appellant.

S270723

Fourth Appellate District, Division Three
G059251

Orange County Superior Court
04CF2780

June 29, 2023

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Evans concurred.

PEOPLE v. REYES

S270723


Opinion of the Court by Liu, J.


Defendant Andres Quinonez Reyes was convicted of second degree murder following a homicide committed by a fellow member of Santa Ana's F-Troop gang. Reyes was one of several members or affiliates of F-Troop who were present when the killing occurred, although the evidence showed he was not the shooter. The prosecutor's principal arguments at trial were that Reyes had intended to aid either an assault or disturbing the peace, or that he had conspired to commit one of those offenses. Under the then-applicable natural and probable consequences theory, Reyes could be found guilty of second degree murder if the jury determined that he aided and abetted one of those target crimes and that murder was a natural and probable consequence of the offense.

The Legislature subsequently eliminated the natural and probable consequences theory of liability as a basis for a murder conviction in Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015, § 2). Reyes petitioned for resentencing under Penal Code former section 1170.95, which has since been renumbered as Penal Code section 1172.6 (Stats. 2022, ch. 58, § 10). (All statutory references are to the Penal Code.) He argued that the evidence against him did not support a conviction under any valid theory of murder in light of the limitations imposed by Senate Bill No. 1437. The trial court denied his petition, finding that he was guilty beyond a reasonable doubt of implied malice murder,

an alternative theory that remained available after Senate Bill No. 1437.  The Court of Appeal affirmed.  (*People v. Reyes* (Aug. 4, 2021, G059251) [nonpub. opn.].)  Because the trial court erred in denying Reyes's petition, we reverse the Court of Appeal's judgment with instructions to remand the case to the trial court for further proceedings on Reyes's resentencing petition.

## I.

In August 2004, when Reyes was 15 years old, he was in a park with a group of older boys and young men between the ages of 16 and 21.  All of them, including Reyes, were members of F-Troop or an affiliated gang.  One of the young men, Francisco Lopez, showed the group a revolver he was carrying.  A few hours later, after meeting with two other members of F-Troop, some of them, including Reyes, proceeded on their bicycles to an area on the edge of territory belonging to a rival gang.

A witness testified that a member of the group of bicycle riders called out for a passing car to stop, saying, "Hey, Homey, stop.  We want to talk to you."  The car sped up, and the group chased after it, with riders in front yelling to those in back to "keep up" and those in back yelling for the riders in front to slow down.  The group came together and stopped at an intersection, and the car made a U-turn and drove past them.  Moments later, there was a gunshot, and the riders fled in different directions. The evidence showed that a single gunshot had struck the driver Pedro Rosario in the head, killing him.  The prosecutor argued that Lopez was the shooter.  There does not appear to be any direct evidence that Reyes knew the gun was loaded before Lopez shot Rosario.

Reyes was in possession of the murder weapon approximately 40 minutes later when, together with three other

2

bicycle riders, he confronted Felix Nieves. Nieves, who did not belong to a gang, was walking in F-Troop territory near where Rosario had been shot. Reyes asked Nieves what "barrio" he belonged to; Nieves denied any gang affiliation and said he did not want any problems. Reyes said he was from "the Troop" and challenged Nieves to a fight. When Nieves saw Reyes reach to pull something from his waistband, he fled. Reyes and his companions caught Nieves about two blocks away, and the group assaulted him. At one point, Reyes stood behind Nieves and held a gun to the back of his neck. Nieves managed to hit Reyes and grab the weapon. Reyes and the others fled.

Two days later, when Reyes was arrested, he admitted he was at the scene of the shooting, saying, "I didn't shoot, but because I was there with my homies, I'm going to get charged with murder too." Reyes was charged with murder. Conceding that Reyes was not the shooter, the prosecutor proceeded on two theories of derivative liability. First, the prosecutor argued that Reyes aided and abetted the crime of disturbing the peace or that he conspired with Lopez to commit either disturbing the peace or assault, and that murder was a natural and probable consequence of one of those target offenses. Alternatively, the prosecutor argued that Reyes directly aided and abetted the murder by "backing up fellow gang members" during the killing. This theory relied on the testimony of David Rondou, a Santa Ana Police Department detective who testified for the prosecution as a gang expert. Detective Rondou testified that when gang members accompany a fellow gang member who commits a murder, "[t]hey're there for backup." He explained that among street gangs, having backup means "taking other members of that gang or entrusted members of that gang with you to commit some sort of crime in case you need help. They're

there to support whatever you're doing. And if you need something, whether it be fighting, getting the gun and shooting, whatever need be for the incident you're involved in, those guys that are there for backup are there to support whatever you're doing."

There was no evidence that Reyes had expressly agreed to serve as backup while Lopez committed the murder. The prosecutor argued that there was no need to show an express agreement because the jury could "infer from the surrounding facts" that Reyes was acting as backup. The prosecutor pointed to Reyes's "presence" at the time of the shooting and earlier in the park when Lopez showed the gun to the others; his "companionship" with Lopez, i.e., "[t]he fact that they're homies"; his "flight from the scene" after the killing; and the fact that Reyes subsequently possessed the murder weapon and used it during a separate assault later that day.

Reyes was convicted of second degree murder and street terrorism, as well as enhancements for committing the murder for the benefit of a gang and for vicariously discharging a firearm resulting in death. He was sentenced to 40 years to life in prison for the murder and firearm enhancement, with the gang enhancement stayed and a two-year sentence for the street terrorism charge imposed concurrently.

Twelve years after Reyes was sentenced, the Legislature enacted Senate Bill No. 1437 " 'to more equitably sentence offenders in accordance with their involvement in homicides.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 839 (*Gentile*).) As relevant here, the bill amended section 188 to provide that, except in cases of felony murder, "in order to be convicted of murder, a principal in a crime shall act with malice

aforethought." (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.) This change "bars a conviction for first or second degree murder under a natural and probable consequences theory." (*Gentile*, at p. 846.)

Reyes petitioned the trial court for resentencing under former section 1170.95 (now § 1172.6), arguing that he was convicted of murder under the now-invalid natural and probable consequences theory. (For clarity, we refer simply to § 1172.6.) The court appointed counsel for Reyes and held a hearing, at which Reyes argued that the evidence did not support a murder conviction under any valid theory because it did not show that he committed "an act that actually . . . help[ed], encourage[d], [or] facilitate[d] Francisco [Lopez] in the shooting." The court denied the petition, finding that Reyes was guilty beyond a reasonable doubt of second degree murder. The court was "guided by the principles that are in [CALCRIM No. 520], specifically implied malice." It found that "the act in this case is the defendant, along with several other gang members, one of which [was] armed, traveled to rival gang territory," that the natural and probable consequence of their doing so was dangerous to human life, that Reyes was aware the act was dangerous to human life, and that he deliberately acted with conscious disregard for that danger. Reyes appealed, arguing in part that "there was no evidence of any acts taken by appellant to aid or assist in or facilitate the commission of the murder." After extensively quoting the trial court's findings, the Court of Appeal held that the evidence was sufficient to establish Reyes's guilt of second degree murder and affirmed. We granted review.

## II.

As noted, in denying Reyes's resentencing petition, the trial court said it was "guided by the principles" of implied malice murder in CALCRIM No. 520. Applying the four elements set out in CALCRIM No. 520, the court found that (1) Reyes intentionally committed the act of traveling "along with several other gang members, one of which [was] armed, . . . to rival gang territory"; (2) "[t]he natural and probable consequences of the act were dangerous to human life"; (3) Reyes knew his act of traveling to rival gang territory was dangerous to human life; and (4) he acted deliberately and with conscious disregard of that danger.

The trial court did not mention direct aiding and abetting, and its findings can be read to indicate that it upheld Reyes's murder conviction on the theory that he was a direct perpetrator who harbored implied malice. At oral argument, the Attorney General said there is "no doubt" this reading is correct. But the prosecutor relied only on aiding and abetting theories to prove Reyes's liability for murder, and the trial court, prior to the resentencing hearing, asked the parties to review *People v. Soto* (2020) 51 Cal.App.5th 1043, a resentencing matter that involved aider and abettor liability for an implied malice murder, and then questioned the parties about that case at the hearing. In this context, the trial court's findings arguably could be read to uphold Reyes's murder conviction on the theory that he directly aided and abetted implied malice murder. Given the lack of clarity on this point, and out of an abundance of caution, we address the trial court's consideration of Reyes's resentencing petition under both direct perpetrator and direct aiding and abetting theories. In so doing, we express no view on whether a court may deny a section 1172.6 resentencing petition based on

a theory of murder not argued by the prosecution at trial. Nor do we have occasion, given the parties' contentions and the procedural posture of this matter, to consider the overall scope of section 1172.6 resentencing proceedings. (See *People v. Curiel* (Nov. 4, 2021, G058604) [nonpub. opn.], review granted Jan. 26, 2022, S272238.)

Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence. (See, e.g., *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) Under this standard, we review the record " ' "in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 277, italics omitted.) But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 ["Questions of law relate to the selection of a rule; their resolution is reviewed independently."].) As we explain, assuming without deciding that the trial court permissibly upheld Reyes's murder conviction on a theory that was not presented at trial, its conclusion that Reyes's conviction was sustainable on a direct perpetrator theory was not supported by substantial evidence. And to the extent the trial court purported to uphold Reyes's murder conviction on a direct aiding and abetting theory, the court misapprehended what is required as a matter of law to prove aiding and abetting implied malice murder.

## A.

We first address simple implied malice murder. Murder is committed with implied malice when "the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " (*People v. Knoller* (2007) 41 Cal.4th 139, 143 (*Knoller*).) " 'To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 643 (*Jennings*).)

On this record, it cannot be said that Reyes committed an act that "proximately caused" Rosario's death. (*Knoller, supra,* 41 Cal.4th at p. 152.) The prosecutor proceeded on the theory that Lopez shot Rosario, and no evidence was presented that Reyes's conduct was a "substantial factor" that contributed to the shooting. (*Jennings, supra,* 50 Cal.4th at p. 643.) The evidence established that Reyes proceeded to an area on the edge of territory belonging to a rival gang and, alongside the other bikers, chased after Rosario's car. But acts that merely create a dangerous situation in which death is possible depending on how circumstances unfold do not, without more, satisfy this causation requirement. There was no evidence that Reyes's acts precipitated or provoked the shooting. And there is no reason to believe that the killing of Rosario would not have occurred if Reyes had not accompanied his fellow gang members on the ride or participated in the chase. (See *People v. Cervantes* (2001) 26 Cal.4th 860, 866 ["In homicide cases, a 'cause of the death of [the decedent] is an act . . . that sets in motion a chain of events that produces as a direct, natural and probable

consequence of the act . . . the death . . . and without which the death would not occur.' "].) Reyes's acts of bicycling into rival territory and chasing after Rosario's car with Lopez and other fellow gang members were too attenuated in the chain of events to have proximately caused the killing; any causal link between Reyes's conduct and Rosario's death is tenuous at best. Accordingly, we find no substantial evidence to support the trial court's denial of Reyes's resentencing petition based on his liability for second degree murder on a direct perpetrator theory.

Although lack of proximate causation suffices to establish that the trial court erred in denying Reyes's resentencing petition on a direct perpetrator theory, we also take issue with the trial court's conclusion that "[t]he natural and probable consequences" of Reyes's act of traveling to rival gang territory with several other gang members, one of whom was armed, "were dangerous to human life." To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must " 'involve[] a high degree of probability that it will result in death.' " (*Knoller*, *supra*, 41 Cal.4th at p. 152; see *ibid.* [under the objective component of implied malice, " ' "dangerous to life" ' " means the same thing as a " 'high degree of probability that' " the act in question " 'will result in death' "]; *People v. Cravens* (2012) 53 Cal.4th 500, 513 (conc. opn. of Liu, J.) ["Although an act that will certainly lead to death is not required, the probability of death from the act must be more than remote or merely possible."].)

As noted, the prosecutor conceded that Reyes was not the shooter; the evidence established that Reyes and his fellow gang members, one of whom was armed, bicycled to an area on the edge of territory belonging to a rival gang. It may have been

likely that this act would result in some sort of gang confrontation, and it is possible that someone would get hurt or killed. But the act does not by itself give rise to a high degree of probability that death will result. In issuing its ruling, the trial court mentioned Detective Rondou's testimony suggesting that Reyes was providing "backup" to the shooter, as well as Reyes's use of the same gun in the subsequent attack on Nieves. But this evidence is insufficient to support a conclusion that Reyes committed an act that carried a " 'high degree of probability' " of death. (*Knoller*, *supra*, 41 Cal.4th at p. 152.) Even if the gang expert's testimony and the attack on Nieves might shed light on Reyes's role and mental state in the sequence of events, those pieces of evidence do not speak to whether Reyes's act itself — in the trial court's words, "the act in this case is the defendant, along with several other gang members, one of which [was] armed, traveled to rival gang territory" — was dangerous to life such that it satisfied the actus reus element of implied malice murder.

**B.**

To the extent the trial court purported to sustain Reyes's conviction on a theory of directly aiding and abetting implied malice murder, the trial court's findings rested on an error of law. As noted, the prosecutor relied on two theories of aiding and abetting to establish Reyes's liability for murder. After conceding that Reyes was not the shooter, the prosecutor informed the jury that it could find Reyes guilty of second degree murder under a theory of direct aiding and abetting or under a natural and probable consequences theory. Because Senate Bill No. 1437 eliminated the latter theory (see *Gentile*, *supra*, 10 Cal.5th at p. 839), we examine whether the trial court properly understood the elements of direct aiding and abetting.

At the outset, we note that Reyes does not contest the validity of a direct aiding and abetting theory of second degree murder, but the Office of the State Public Defender as amicus curiae does. Case law has recognized and applied this theory, and we see no basis to abrogate it. In *Gentile*, we observed that "notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile*, *supra*, 10 Cal.5th at p. 850.) Since our decision in *Gentile*, the Courts of Appeal have held that a defendant may directly aid and abet an implied malice murder. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 588–591, review granted July 27, 2022, S274792; *People v. Superior Court* (*Valenzuela*) (2021) 73 Cal.App.5th 485, 499; *People v. Powell* (2021) 63 Cal.App.5th 689, 710–714 (*Powell*); see also *People v. Langi* (2022) 73 Cal.App.5th 972, 979–983.)

The Court of Appeal in *Powell* explained the elements as follows: "[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. ([*People v. McCoy* (2001) 25 Cal.4th 1111, 1122.]) In the context of implied malice, the actus reus required of the perpetrator is the commission of a life endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and

abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life." (*Powell, supra,* 63 Cal.App.5th at pp. 712–713, fn. omitted; see *id.* at p. 713, fn. 27 ["The relevant act is the act that proximately causes death."], citing *People v. Cravens, supra,* 53 Cal.4th at p. 507, and *Knoller, supra,* 41 Cal.4th at p. 143.)

*Powell* further explained: "The reason why there is a dearth of decisional law on aiding and abetting implied malice murder may be the heretofore availability of the natural and probable consequences doctrine for second degree murder, which was easier to prove. . . . [T]he natural and probable consequences doctrine did not require that the aider and abettor intend to aid the perpetrator in committing a life-endangering act . . . . What was natural and probable was judged by an objective standard and it was enough that murder was a reasonably foreseeable consequence of the crime aided and abetted." (*Powell, supra,* 63 Cal.App.5th at p. 711, fn. 26.)

In denying Reyes's resentencing petition, the trial court said it was "guided by the principles" of implied malice murder in CALCRIM No. 520. That instruction alone, however, does not encompass the elements of aiding and abetting implied malice murder as set out in *Powell*. By relying exclusively on the legal principles outlined in CALCRIM No. 520, the trial court did not appear to recognize that implied malice murder requires, among other elements, proof of the aider and abettor's knowledge and intent with regard to the *direct perpetrator's* life endangering act. (See *Powell, supra,* 63 Cal.App.5th at pp. 712–713.)

The trial court's factual findings illustrate the nature of its error. The court found that "the defendant, along with several other gang members, one of which [was] armed, traveled to rival gang territory" and then considered whether that act was done with the mental state required for implied malice. In particular, after finding the natural and probable consequence of the act to be "dangerous to human life," the trial court asked whether Reyes "at the time he acted, . . . knew that the act was dangerous to human life," and whether "he deliberately acted with conscious disregard for human life." But implied malice murder requires attention to the aider and abettor's mental state concerning the life endangering act committed by the direct perpetrator, such as shooting at the victim. (See *Powell*, *supra*, 63 Cal.App.5th at p. 713, fn. 27 ["The relevant act is the act that proximately causes death."].) Here, assuming the life-endangering act was the shooting, the trial court should have asked whether Reyes knew that Lopez intended to shoot at the victim, intended to aid him in the shooting, knew that the shooting was dangerous to life, and acted in conscious disregard for life. (See *id.* at pp. 712–713.) Because the court did not do so, its decision was based on an error of law insofar as the court sustained Reyes's murder conviction on a direct aiding and abetting theory.

## CONCLUSION

In sum, the trial court erred in sustaining Reyes's second degree murder conviction, whether it relied on a direct perpetrator theory or on a direct aiding and abetting theory. We find no substantial evidence to support a finding that Reyes was the direct perpetrator of Rosario's murder. And to the extent the trial court denied Reyes's petition under a direct aiding and abetting theory, the court committed reversible error by

misunderstanding the legal requirements of direct aiding and abetting implied malice murder.  We agree with the Attorney General that remand is appropriate under these circumstances; given the nature of this error, it is "uncertain whether the trial court would have reached the same result using correct legal standards." (*Knoller*, *supra*, 41 Cal.4th at p. 158.)  Accordingly, we reverse the judgment of the Court of Appeal with directions to remand the matter to the trial court for further proceedings consistent with this opinion.  We express no view on the merits of Reyes's resentencing petition under a proper application of the elements of implied malice murder on a direct aiding and abetting theory.


**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Reyes

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 8/4/21 – 4th Dist., Div. 3
**Rehearing Granted**

_____

**Opinion No.** S270723
**Date Filed:** June 29, 2023

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Richard M. King

_____

**Counsel:**

Gerald J. Miller, under appointment by the Court of Appeal, and Richard A. Levy, under appointment by the Supreme Court, for Defendant and Appellant.

Mary K. McComb, State Public Defender, Samuel Weiscovitz and Jennifer Hansen, Deputy State Public Defenders, for Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

Christopher Hawthorne and Marisa Harris for Juvenile Innocence & Fair Sentencing Clinic as Amicus Curiae on behalf of Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland and Charles C. Ragland, Assistant Attorneys General, Eric A. Swenson, Meredith

White, Jennifer B. Truong and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard A. Levy
Attorney at Law
3868 West Carson Street, Suite 205
Torrance, CA 90503-6706
(310) 944-3311

Junichi P. Semitsu
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9103